Judge CALABRESI concurs in a separate opinion.
DENNIS JACOBS, Chief Judge:
Plaintiff-appellant Donna L. McGullam appeals pro se from a judgment of the United States District Court for the Eastern District of New York (Hurley, J.), granting summary judgment on federal and state law claims of a sexually hostile work environment, disparate treatment, and retaliation in favor of McGullam’s employer, defendant-appellee Cedar Graphics, Inc. Regarding the Title VII hostile work environment claim to which this appeal is limited, we affirm on the ground that the one non-trivial comment that may fall within the limitations period (which was made nearly one year after Cedar Graphics had transferred McGullam to another department) is insufficiently related to the earlier course of alleged harassment. The governing authority is National Railroad Passenger Corporation v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).
BACKGROUND
For reasons explained later in this opinion, McGullam was required to file a complaint with the appropriate agency within 300 days of the last instance in a course of harassment; and if she did, that filing would have allowed her to plead the full prior course of related harassment.
The relevant chronology is that in April 1996, McGullam was hired by Cedar Graphics, a full-service printing company, to work in the production department. On September 22, 1999, after she complained of sexual harassment and at her request, she was transferred to a position in the estimating department. She was terminated on September 12, 2000, and she filed her complaint with the relevant agencies on July 3, 2001.
McGullam alleges that when she was in the production department she “was regularly exposed to sexual comments, sexually *73 explicit matters, sexual jokes, hostile [and] vulgar language, sexual [innuendos] and gross behaviors, primarily by male coworkers, including management” despite “[c]ontinual complaints to management.” According to McGullam’s unsworn “journal” (submitted by McGullam in the district court and accepted as true by Cedar Graphics for purposes of the summary judgment motion), this offensive “production department conduct” included, but is not limited to, the following:
• On the first day of McGullam’s employment, April 15, 1996, she was asked to retrieve a file by climbing a ladder and the male co-worker holding the ladder told her “not to worry, that he wasn’t going to look up [her] skirt.”
• In winter 1997, McGullam brought several packages to the shipping department late one evening and a male coworker commented in part that “‘I didn’t think you could even drag your big fat ass back here.’ ”
• In November 1998, a male co-worker in whom McGullam had confided about a “romantic break up,” “attacked [her] in front of the entire production department” by stating: “ ‘I think you’d be a lot happier person if you got f* * * *d more often. Yeah, I think that’s definitely your problem, you don’t get f* * * *d enough.’”
• In July 1999, a male co-worker “sitting at his desk with both arms outstretched toward [McGullam] and one hand shaped into a gun” stated “ ‘I’d like to pump a bullet into your head, right behind your ear and blow your brains out.’ ”
• In summer 1999, McGullam “had to endure overhearing the details of a conversation” in which a female coworker told two male co-workers that she witnessed an act of “ ‘doggie style’ ” sex in the bathroom of a nightclub the previous weekend.
• On an unknown date, a male co-worker commented “ ‘Boing, boing, look at that — right through the denim,’ ” a “reference to the fact that [McGullam’s] hardened nipples were visible even through [her] denim jumper.”
• On an unknown date, an unknown person replaced a sign McGullam had taped to her computer that read “ ‘A lot goes into being the best,’ ” with a similar sign that read “ ‘A lot goes in to being the bitch.’ ”
McGullam’s journal explains that she “was desperate to remove” herself from the production department and therefore requested transfer to an open position in the estimating department, “which was on the other side of the building — hopefully far enough away from the hostility, harassment and threats of violence.” As McGullam explained at her deposition, she “mov[ed] because [she] could not take working in this sexually aggressive and hostile environment where [she] was eventually physically threatened by a colleague.” [1]
McGullam complains of only a single incident post-dating her September 22, 1999 transfer:
While working in the estimating department, I was away from the majority of the harassment, hostility and aggravation. However, all comments of a sexual and derogatory nature did not cease entirely. On the opposite side of my cubicle] wall was a salesman ... [who] carried on numerous lengthy conversations with male buddies and made fre *74 quent comments about women such as referring to them as “chickies[.”] He also remarked that “[i]f it wasn’t going to be a sleep-over, she wasn’t worth the trip[,”] regarding a woman friend that he was involved with (translating to: she’s only worth the trip if I’ll be getting sex). This was a thoroughly demeaning comment regarding women.
The salesman who offended McGullam by the “chickies comments” and the “sleepover comment” was not a member of the production department or of the estimating department.
On September 12, 2000, Cedar Graphics terminated McGullam’s employment. On July 3, 2001, McGullam filed a complaint with the New York State Division of Human Rights (the “NYSDHR”) and the United States Equal Employment Opportunity Commission (the “EEOC”) alleging a sexually hostile work environment and retaliatory termination. On February 9, 2004, the NYSDHR issued a Determination and Order After Investigation finding no probable cause and dismissing McGullam’s complaint. On April 2, 2004, the EEOC adopted the findings of the NYSDHR, dismissed McGullam’s complaint, and issued a right-to-sue letter, which McGullam received on April 8, 2004.
On July 6, 2004, McGullam pro se filed this lawsuit, alleging that she was discriminated against on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (“Title VII”) (the relevant text is in the margin[2]). This appeal considers McGullam’s claim of a “[sjexually [hjostile [e]nvironment that was pervasive.” The disposition of her other claims is set forth in the margin.[3]
On December 21, 2007, Cedar Graphics moved for summary judgment, duly attaching a “Notice to Pro Se Litigant Opposing Motion for Summary Judgment.” McGullam failed to file any opposition. On August 20, 2008, the district court granted summary judgment on the Title VII hostile work environment claim and entered final judgment in favor of Cedar Graphics. The district court determined that (i) the hostile work environment claim was time-barred, and (ii) in the alternative, McGullam failed to raise a genuine issue of material fact as to the severity or pervasiveness of the complained-of conduct. McGullam v. Cedar Graphics, Inc., No. 04-CV-2891 *75 (DRHXAKT), 2008 WL 3887604, at *5-7 (E.D.N.Y. Aug. 20, 2008). On September 19, 2008, McGullam timely filed a notice of appeal.
DISCUSSION
“We review an award of summary judgment de novo, and will uphold the judgment if the evidence, viewed in the light most favorable to the party against whom it is entered, demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law.” Global Network Commc’ns, Inc. v. City of New York, 562 F.3d 145, 150 (2d Cir.2009); see also Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004) (applying the same standard of review to the grant of an unopposed motion for summary judgment); Fed.R.Civ.P. 56(e)(2). Following de novo review, we affirm the grant of summary judgment, but do so on a ground different from either of the two alternative grounds relied on by the district court. See, e.g., Boy Scouts of America v. Wyman, 335 F.3d 80, 90 (2d Cir.2003) (“[W]e may affirm the judgment of the district court on any ground appearing in the record.”).
I
Relevant to this appeal, Title YII’s administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(l) (providing that where a complainant “has initially instituted proceedings with a State or local agency with authority to grant or seek relief,” the complainant has 300 days from the occurrence of the “alleged unlawful employment practice” to file a complaint with the EEOC).
“When, as in this case, a plaintiffs allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct.” Petrosino v. Bell Atl, 385 F.3d 210, 220 (2d Cir.2004). With respect to claims based on “termination, failure to promote, denial of transfer, or refusal to hire,” Morgan, 536 U.S. at 114, 122 S.Ct. 2061, section “2000e-5(e)(l) ‘precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period,’ even if other acts of discrimination occurred within the statutory time period,” Patterson v. County of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004) (quoting Morgan, 536 U.S. at 105, 122 S.Ct. 2061).
But “[hjostile work environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The ‘unlawful employment practice’ therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.” Morgan, 536 U.S. at 115, 122 S.Ct. 2061 (internal citation omitted). Accordingly, “consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.” Id. at 105, 122 S.Ct. 2061; see also id. at 118, 122 S.Ct. 2061 (“Given ... that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be *76 timely, the employee need only file a charge within ... 300 days of any act that is part of the hostile work environment.”). Morgan illustrated this holding with two 401-day scenarios:
(1) Acts on days 1-400 create a hostile work environment. The employee files the charge on day 401. Can the employee recover for that part of the hostile work environment that occurred in the first 100 days? (2) Acts contribute to a hostile environment on days 1-100 and on day 401, but there are no acts between days 101-400. Can the act occurring on day 401 pull the other acts in for the purposes of liability? In truth, all other things being equal, there is little difference between the two scenarios as a hostile environment constitutes one “unlawful employment practice” and it does not matter whether nothing occurred within the intervening 301 days so long as each act is part of the whole. Nor, if sufficient activity occurred by day 100 to make out a claim, does it matter that the employee knows on that day that an actionable claim happened; on day 401 all incidents are still part of the same claim. On the other hand, if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.
Id. at 118, 122 S.Ct. 2061. Accordingly, if “any act falls within the statutory time period,” we need “to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice.” Id. at 120,122 S.Ct. 2061.
II
We start by asking whether McGullam alleged any discriminatory act within the limitations period.
McGullam filed her complaint with the NYSDHR — which sent the complaint to the EEOC for dual filing purposes — on July 3, 2001. The limitations period therefore started on September 6, 2000 (300 days prior to July 3, 2001). Cedar Graphics terminated McGullam’s employment on September 12, 2000. Accordingly, unless a discriminatory act contributing to her hostile work environment claim fell within the seven-day window- — -between the start of the limitations period on September 6, 2000 and the termination of her employment on September 12, 2000 — her claim is time-barred.
The only conduct complained of after McGullam’s September 22, 1999 transfer to the estimating department — and therefore the only alleged discriminatory acts that could fall within the seven-day window — are the chickies comments and the sleep-over comment. As alleged, the chickies comments are too trivial to contribute to a Title VII hostile work environment claim. They were not obscene or lewd, or even sexually suggestive. Even if the chickies comments could be deemed unrefined or uncivil, Title VII simply “does not set forth a general civility code for the American workplace.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (internal quotation marks omitted). We therefore focus exclusively on the timing of the sleep-over comment.
McGullam nowhere dates that single incident. Then again, the statute of limitations is an affirmative defense, and the defendant has not tried to find out whether McGullam can date the incident. McGullam’s submissions arguably allege that the sleep-over comment was made within the *77 seven-day window.[4] See Terry v. Ashcroft, 886 F.3d 128, 137 (2d Cir.2003) (“In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.” (internal quotation marks omitted)). In any event, the district court assumed that the sleep-over comment occurred within the limitations period, and Cedar Graphics does not argue to the contrary on appeal.
Ill
Was the sleep-over comment sufficiently related to the production department conduct to be part of the same alleged hostile work environment practice?
Under Morgan, a sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related. “[I]t does not matter whether nothing occurred within the intervening [ ] days so long as each act is part of the whole.” Morgan, 536 U.S. at 118, 122 S.Ct. 2061.
The district court’s relatedness test was to consider whether the within-limitations period incident satisfied the severe or pervasive standard of a hostile work environment claim. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (determining that to establish a Title VII hostile work environment claim, a plaintiff must show that “the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment” (internal quotation marks and citation omitted)). Cedar Graphics urges us to use the same test. However, this approach finds no support in Morgan, which emphasized that the “repeated conduct” giving rise to a hostile work environment claim “occurs over a series of days or perhaps years” and that a component act need not be “actionable on its own.” Morgan, 536 U.S. at 115, 122 S.Ct. 2061. We instead affirm using a different analysis.
Morgan requires courts to make an individualized assessment of whether incidents and episodes are related. Morgan’s discussion of the 401-day scenarios does not limit the relevant criteria, or set out factors or prongs. See Morgan, 536 U.S. at 118, 122 S.Ct. 2061 (“[I]f an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act.”).
This flexibility is useful in a context as fact-specific and sensitive as employment discrimination and as amorphous as hostile work environment. Morgan determined that “[although many of the acts upon which [the plaintiffs] claim depends occurred outside the 300 day filing period, we cannot say they are not part of the same actionable hostile environment claim” based on “evidence from a number of ... employees that managers made racial *78 jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets.” Id. at 120-21, 122 S.Ct. 2061; see also Rowe v. Hussmann Corp., 381 F.3d 775, 781 (8th Cir. 2004) (where “it was the same harasser ... committing the same harassing acts ...,” concluding “as a matter of law that the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment”); Lucas v. Chi Transit Auth., 367 F.3d 714, 727 (7th Cir.2004) (finding that an “altercation in 2001” arising out of a “chance meeting” between an employee and a former supervisor “simply cannot be considered part of’ any “1997 hostile work environment” where there were “no incidents during the intervening years”).
In this case, the sleep-over comment is insufficiently related to the production department conduct chiefly for two reasons. First, Cedar Graphics transferred McGullam (at her request) from the production department, where she experienced harassment, to the estimating department, which was a different environment in material respects — and in a different sector of the building. See Morgan, 536 U.S. at 118, 122 S.Ct. 2061 (recognizing the importance of an “intervening action by the employer”). McGullam testified at her deposition that she had no problem with anyone in the estimating department.
Second, the sleep-over comment “had no relation to the” production department harassment. Id. In the production department McGullam encountered lewd and teasing comments that were about McGullam, and that were addressed to her or were made in her presence. The sleepover comment — offensive though it may have been — was not lewd, it was not about McGullam, and it was not addressed to her or made for her to hear it. And the salesman she overheard was a member of neither the production department nor the estimating department. Moreover, for the sleep-over comment to fall within the limitations period, it must have occurred nearly one year after McGullam’s transfer. Although that incident-free interval does not preclude relatedness, it renders less plausible the notion that the sleep-over comment is of a piece with the production department conduct. Given these discontinuities, we have no trouble finding insufficient relatedness.
Accordingly, the sleep-over comment did not contribute to any hostile work environment claim based on the production department conduct and such a claim is therefore time-barred.[5]
*79 IV
McGullam’s claim nevertheless might survive summary judgment if there were a triable issue as to whether the sole non-trivial incident occurring within the limitations period was itself of sufficient severity to support a hostile work environment claim (albeit a truncated claim premised on that single incident). See, e.g., Howley v. Town of Stratford, 217 F.3d 141, 148, 153-56 (2d Cir.2000).
To repeat, a plaintiff seeking to establish a Title VII hostile work environment claim must show that “the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment.” Harris, 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks and citation omitted). This severe or pervasive standard “has objective and subjective elements: the misconduct shown must be ‘severe or pervasive enough to create an objectively hostile or abusive work environment,’ and the victim must also subjectively perceive that environment to be abusive.”[6] Alfano v. Costello, 294 F.3d 365, 374 (2d Cir.2002) (quoting Harris, 510 U.S. at 21, 114 S.Ct. 367). Courts review the totality of the circumstances, including “the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee’s work performance.” Harris, 510 U.S. at 23, 114 S.Ct. 367; see also Morgan, 536 U.S. at 113, 122 S.Ct. 2061 (explaining that an employee is not barred “from using ... prior acts as background evidence in support of a timely claim”); Fitzgerald v. Henderson, 251 F.3d 345, 365 (2d Cir.2001) (“A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period.”).[7]
MeGullam’s subjective perception notwithstanding, the sleep-over comment objectively falls short of the requisite levels of severity or pervasiveness. Cf. e.g., Alfano, 294 F.3d 365 (overturning a jury verdict in favor of the plaintiff because the evidence at trial — demonstrating conduct far more egregious than the sleep-over comment in this case — was insufficient as a matter of law to establish a sexually hostile work environment).
Accordingly, the sleep-over comment alone does not present a triable issue regarding McGullam’s hostile work environment claim.
CONCLUSION
We have considered all of MeGullam’s contentions on this appeal and have found them to be without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.

. Despite this stated rationale and the attendant pay cut, McGullam publicly portrayed her transfer as a positive career move.

. Under Title VII, it is "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.” 42 U.S.C. § 2000e-2(a)(1).

. On this appeal, we consider only McGullam’s Title VII sexually hostile work environment claim. In her complaint, McGullam additionally alleged that Cedar Graphics discriminated against her by terminating her employment and by providing her with "[u]n-equal terms and conditions of [] employment.” But by order dated March 18, 2009, this Court dismissed her appeal as to all non-hostile work environment claims "because they lack an arguable basis in law or fact.” By order dated May 21, 2009, this Court denied McGullam's motion for reconsideration of the March 18, 2009 order.
To the extent that the district court construed McGullam’s complaint as additionally asserting claims pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq., the district court lacked subject matter jurisdiction over those claims. New York’s election of remedies statute deprives New York courts of jurisdiction to hear claims filed with the NYSDHR and dismissed for any reason other than those listed in the statute. See N.Y. Exec. Law § 297(9). "[A] state law depriving its courts of jurisdiction over a state law claim also operates to divest a federal court of jurisdiction to decide the claim.” Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 884 (2d Cir.1995).

. This construction finds support in (i) McGullam's NYSDHR complaint, which asserted that the "most recent or continuing discrimination took place [on] 09/12/00”; (ii) McGullam’s opposition to Cedar Graphics’s motion for partial summary judgment, which asserted that her claim "encompassed the entire employment period”; and (iii) McGullam’s November 21, 2008 motion to proceed in forma pauperis in this Court, which asserted that her claim was “of a continuous and ongoing nature from the first day of employment until the last and the entire time period is to be considered on that basis.”

. Unlike the district court, we therefore do not reach the merits of a hostile work environment claim based on the production department conduct and do not dwell on the severity (or lack thereof) of that pre-limitations conduct. Judge Calabresi does, however, for the purpose of recommending that the Morgan test be modified or re-imagined. Under Judge Calabresi’s reasoning, within-limitations conduct that is otherwise insufficiently related to pre-limitations conduct nevertheless may revive pre-limitations conduct if that conduct is especially severe. Thus, Judge Calabresi’s concurring opinion states: "The severity of th[e] pre-limitations period conduct pushes in the direction of finding a single hostile work environment....”
This reasoning turns Morgan on its head. Morgan directs courts to evaluate the relatedness of within-limitations conduct and prelimitations conduct. Consistent with a flexible approach, courts may evaluate relatedness by comparing the severity of latter-day and earlier incidents. Obviously, the more similar the incidents are in severity, the more likely it is that the incidents are related under Morgan. Judge Calabresi's approach inverts the test such that latter-day conduct that is mild somehow becomes "related” for the very rea *79 son that it differs markedly from earlier conduct that is severe.

. A Title VII sexually hostile work environment claim further requires a plaintiff to establish that the conduct at issue occurred “because of the plaintiff's sex,” Patane v. Clark, 508 F.3d 106, 113 (2d Cir.2007) (per curiam) (internal quotation marks omitted), and that "a specific basis exists for imputing the conduct that created the hostile environment to the employer,” Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir.1997).

. We read section II of Judge Calabresi's concurring opinion to suggest nothing more than that time-barred conduct may be considered as background evidence in certain circumstances. As shown by the parenlheticals to the citations in the text, we have no quarrel with that suggestion.