10-756-cv
Vito v. Bausch & Lomb

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 17th day of December, two thousand ten.

PRESENT:  GERARD E. LYNCH,
                    DENNY CHIN,
                                        *Circuit Judges*,
                    EDWARD R. KORMAN,
                                        *District Judge.*[*]
-----------------------------------------------------------------

ROSEMARIE VITO,
                                        *Plaintiff-Appellant*,

                    v.                                        No. 10-756-cv

BAUSCH & LOMB INCORPORATED,
                                        *Defendant-Appellee.*

-----------------------------------------------------------------

FOR APPELLANT:          Christina A. Agola, Rochester, New York.

FOR APPELLEE:           Laura H. Harshbarger, Bond, Schoeneck & King, Syracuse, New York.

Appeal from the United States District Court for the Western District of New York

(Charles J. Siragusa, *Judge*).

---

[*] Honorable Edward R. Korman of the United States District Court for the Eastern District of New York, sitting by designation.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff-appellant Rosemarie Vito ("Vito"), a Filipino woman, sued her former employer, defendant-appellee Bausch & Lomb, for employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and New York State Human Rights Law ("NYSHRL"). The district court (Siragusa, *J.*) granted summary judgment for Bausch & Lomb and Vito appealed. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

**DISCUSSION**

We review orders granting summary judgment de novo and focus on whether the district court properly concluded that there was no genuine issue as to any material fact and that the moving party was entitled to judgment as a matter of law. Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005). In making that determination, we "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in that party's favor." Mathirampuzha v. Potter, 548 F.3d 70, 74 (2d Cir. 2008).[1]

I. Vito's Hostile Work Environment Claims

---

[1] Our review is hindered by Vito's failure to support her factual assertions with adequate citations to the record. See Fed. R. App. P. 28(e) ("References to parts of the record contained in the appendix . . . must be to the pages of the appendix."). This deficiency is all the more troubling because Vito's counsel has a record of disregarding the rules of this Court. See Male v. Tops Markets, LLC, 354 F. App'x 514, 515 (2d Cir. 2009) (noting previous dismissal for counsel's "repeated failures to comply with the rules of this Court").

"In order to establish a hostile work environment . . . [Vito] must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered."   Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723-24 (2d Cir. 2010); see Howley v. Town of Stratford, 217 F.3d 141, 153 (2d Cir. 2000).  Bausch & Lomb initially employed Vito in its PureVision department.  Approximately one year later she applied for and received a job in the Microbiology department.  These two departments were housed in separate buildings and after the transfer Vito never again spoke to or interacted with her former colleagues from PureVision.  We therefore consider the events in each department separately. See McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 78 (2d Cir. 2010).

A.  PureVision Department

"[I]t is axiomatic that in order to establish a . . . hostile work environment . . . a plaintiff must demonstrate that the conduct occurred because of her [membership in a protected class]."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted).  Many of the incidents Vito claims demonstrate a hostile work environment amount to, at most, workplace bullying completely detached from any discriminatory motive. For example, we can discern no reason why either Shift Supervisor Rich Goodburlet ("Goodburlet") ringing a bell in Vito's presence or co-worker Mehmet Charlayan ("Charlayan") throwing tape at her constitute anything more than "minor annoyances" typical of those "all employees experience."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).  Similarly, Vito was only incidentally involved in much of the sexual banter

3

that allegedly took place in the department. For example, Vito complains that she witnessed Charlayan "flicking his tongue up and down in the direction of Deb Rock" ("Rock"), another one of Vito's coworkers, and that "a note was placed on Deb Rock's back indicating that she was 'property.'"[2]

Vito's few allegations of harassment targeted at her are relatively minor: she claims that Charlayan once displayed a sign on which he had written "69" and that her colleagues had her read from a card that may have contained the word "fucking." These incidents amount to little more than "the sporadic use of abusive language, gender-related jokes, and occasional teasing" that fail to create a hostile environment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

Vito also alleges inappropriate physical contact. According to Vito, Goodburlet once approached her from behind as she sat at her workstation on a chair that had a low backrest and no armrests. While it is not precisely clear from Vito's deposition testimony exactly what transpired, it appears that Goodburlet pushed against the back of her chair and touched part of her back and side. Vito further alleges that on at least two separate occasions Goodburlet touched her shoulder. However, in Quinn v. Green Tree Credit we affirmed a grant of summary judgment in the face of allegations that plaintiff's boss had "deliberately touched [her] breasts with some papers that he was holding" and informed petitioner that she had been voted the "'sleekest ass' in the office." 159 F.3d 759, 768 (2d Cir. 1998), abrogated

---

[2] Vito does not claim that Rock was a victim of sexual harassment. Instead, Vito asserts that Rock and Charlayan were two of her principal harassers.

4

on other grounds by <u>Nat. R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002). Though no doubt irritating, inappropriate, and offensive, the harassment Vito alleges is less severe than the overtly sexual conduct that we found insufficient to sustain a hostile work environment in <u>Quinn</u>.[3] Therefore, after examining de novo "the case-specific circumstances in their totality and evaluat[ing] the severity, frequency, and degree of the [alleged] abuse," <u>Alfano</u>, 294 F.3d at 374, we conclude that the record before us is insufficient to sustain a hostile work environment claim based on Vito's allegations arising out of her time at PureVision.

B. <u>Microbiology Department</u>

Vito alleges that a single incident of improper touching occurred while she worked in the Microbiology department. During the first day of Vito's deposition, she testified that her supervisor, Brian David ("David"), once touched her left shoulder. When asked whether any other physical contact occurred, Vito responded (consistent with her EEOC complaint) "no." The next day, however, Vito testified that David touched the side of her breast.

Vito's testimony regarding this incident is far from clear. Instead of explaining what occurred, Vito merely indicated body movements that the stenographer was unable to record. In her brief before this Court, Vito claims that her supervisor's "right hand *slipped* down

---

[3] Vito's brief also alleges that she was "mimicked" and "ridiculed" "because of her ancestry" and that her co-workers "made fun of [her] English" and "would laugh at [her] when she talked." These are serious allegations, but counsel fails to support them with adequate citations to the record and our independent review uncovered insufficient evidence to create a material issue of fact that would justify overturning the district court's grant of summary judgment.

[from Vito's shoulder] and touched her right breast."[4] (emphasis added.) Assuming that this incident occurred, its severity falls short of the deliberate touching of the petitioner's breast in Quinn and therefore is insufficient to sustain a claim for hostile work environment.

II. Vito's Retaliation Claims Under Title VII and NYSHRL

"Claims for retaliation [under NYSHRL] are analyzed under the same burden-shifting framework established for Title VII cases." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). "In order to establish a prima facie case of retaliation, [Vito] must show that: (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006).

Our thorough review of the record revealed absolutely no conduct by Bausch & Lomb that could be considered an adverse employment action. Vito requested the shift change that occurred at PureVision and she applied for and received the higher paying job in Microbiology. During Vito's time at Bausch & Lomb, her hours were never cut, her job responsibilities never decreased, and her access to overtime never waned. There is no evidence of constructive discharge or any significant retaliatory actions by co-workers or supervisors. As a result, and for substantially the same reasons as set forth in the district court's order, see Vito v. Bausch & Lomb, Inc., No. 07-CV-6500, 2010 WL 681230, at *11-

---

[4] This directly contradicts Vito's deposition testimony in which she plainly stated that David touched her left breast.

13 (W.D.N.Y. Feb. 23, 2010), we affirm the grant of summary judgment for Bausch & Lomb on Vito's retaliation claims.

## CONCLUSION

We have considered Vito's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, we AFFIRM the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court