13-1603-cv
Sanderson v. NYS  Electric & Gas

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of March, two thousand fourteen.

PRESENT:   PIERRE N. LEVAL,
           GUIDO CALABRESI,
           GERARD E. LYNCH,

                      *Circuit Judges.*

---

Shelly Sanderson,

                      *Plaintiff-Appellant*,

          v.                                          No. 13-1603-cv

New York State Electric & Gas Corporation,

                      *Defendant-Appellee.*

---

FOR APPELLANT:          Shelly Sanderson, *pro se* (Christina A. Agola,
                        Christina A. Agola, PLLC, Rochester, New York,
                        filed a brief on behalf of Appellant before being
                        relieved).

FOR APPELLEE:                    Leslie Guy, Hinman, Howard & Kattell, LLP,
                                 Binghamton, New York.

Appeal from the United States District Court for the Western District of

New York (Michael A. Telesca, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiff Shelly Sanderson, formerly a gas fitter employed by defendant

New York State Electric & Gas Corporation ("NYSEG"), appeals an award of

summary judgment for defendant on her federal and state law claims of sex

discrimination, in the form of disparate treatment and sexually hostile work

environment, and retaliation, see 42 U.S.C. §§ 1981, 2000e et seq.; N.Y. Exec. Law

§ 290 et seq. We review a district court's award of summary judgment de novo,

"construing the evidence in the light most favorable to the nonmoving party and

drawing all reasonable inferences in that party's favor." Ramos v. Baldor

Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks

omitted). The plaintiff's state law claims are subject to the same standards of

proof that govern her Title VII claims, and are thus controlled by our discussion

of plaintiff's Title VII claims below unless otherwise indicated. See Hicks v.

2

Baines, 593 F.3d 159, 164 (2d Cir. 2010); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996).  We assume the parties' familiarity with the facts and record of prior proceedings, which we describe only as necessary to explain our decision.

NYSEG provides gas and electric power to customers in upstate New York. Sanderson began working for NYSEG in 2000 as a meter reader.  In 2002, she became a day-shift gas fitter in the company's Geneva Office, where she was the only woman among roughly thirty gas fitters.  From the beginning of her tenure as a gas fitter, Sanderson experienced difficulties with her co-workers. Sanderson's co-workers "shunned" her "on a daily basis," and declined to provide her with assistance that they provided to each other.  One co-worker told her that she was "taking this job from a deserving man who need[ed] to take care of his family."  While in the field, her male co-workers would regularly urinate in her presence, and she was often not provided with adequate means of using a restroom herself.

In 2006, Sanderson voluntarily transferred to the night shift.  Although Sanderson no longer worked with the day-shift gas fitters, she sometimes saw them when she was arriving for her shift, and they were ending theirs.  "[A]

3

couple times a month," the men would engage in "snickering and . . . under the breath" comments when they saw her.[1] In September 2009, Sanderson's supervisor Thomas Kelley informed her that she would be required to return to the day shift as of October 5. After the defendant denied her requests to remain on the night shift, Sanderson reported to the day shift on October 5 and worked through the end of that week. Sanderson testified that during that week she experienced no problems with her co-workers "[o]ther than the continued . . . snickering [and] under-the-breath comments." On October 12, she sought and received permission not to report to work due to stress. Thereafter, Sanderson remained absent from work for several weeks on medical advice. On November 3, Sanderson met with NYSEG representatives to discuss her situation. She informed them that she believed she was being subjected to a hostile work environment and was treated differently based on her sex. Sanderson was ordered to return to work the next day. After she stated that she did not feel capable of doing so, she was fired for insubordination.

---

[1] In 2008, Sanderson was reassigned to a different work location in Wayne County. Sanderson offered no evidence of any further interaction with the Geneva Office day-shift men after her transfer.

Sanderson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 17, 2010. On February 18, 2011, the EEOC issued a right-to-sue letter, and on February 28, 2011, Sanderson filed the instant complaint in the Western District of New York. On March 25, 2013, the district court granted NYSEG's motion for summary judgment with respect to all of Sanderson's claims. Because we conclude that Sanderson's hostile work environment claim is time-barred,[2] and that she has failed to present evidence from which a reasonable jury could conclude that she was fired because of her sex or in retaliation for her protected activity, we affirm the judgment of the district court.

I. Timeliness

"Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the

---

[2] On May 3, 2012, NYSEG moved to amend its answer to assert the affirmative defense of statute of limitations. Although Sanderson states that she does not challenge the district court's decision to permit amendment, her brief later suggests that the district court abused its discretion in granting the amendment because the amendment was, in appellant's view, futile. To the extent that Sanderson challenges the district court's decision to permit NYSEG to amend its answer, we conclude that the district court did not abuse its discretion. See Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995) ("In light of [the] preference that amendments be permitted, it is rare for an appellate court to disturb a district court's discretionary decision to allow amendment.").

claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." Van Zant, 80 F.3d at 712. This "statutory requirement is analogous to a statute of limitations." Id. Accordingly, "[a] plaintiff may bring a claim under Title VII only for acts of discrimination that occurred within the statutory period set by 42 U.S.C. § 2000e-5(e)(1)." Patterson v. County of Oneida, 375 F.3d 206, 220 (2d Cir. 2004). In order to recover for a discrete act of discrimination or retaliation, such as a discharge, failure to hire, or failure to promote, the plaintiff must demonstrate that the discrete act took place within the statutory time period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002); Patterson, 375 F.3d at 220. With respect to a claim that the plaintiff suffered a hostile work environment, on the other hand, the claim is timely "so long as one act contributing to the claim occurred within the statutory period." Patterson, 375 F.3d at 220. If that is the case then "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. (internal quotation marks omitted).

Sanderson filed a charge of discrimination with the EEOC on February 17, 2010, and the parties agree that April 23, 2009 marks the beginning of Title VII's

6

statutory limitations period.[3] With respect to Sanderson's New York Human

Rights Law claims, which are governed by a three-year statute of limitations, the

district court found and the parties do not dispute that the relevant date is

February 27, 2007.  N.Y. C.P.L.R. § 214(2) (McKinney's 2008); Quinn v. Green Tree

Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).[4]

---

[3] The parties do not question the district court's conclusion that Sanderson had 300 days from the alleged discriminatory action within which to file a charge of discrimination with the EEOC.  As in Van Zant, 80 F.3d at 712 n.1, "[w]e find no reference in the record to [the plaintiff] having filed her charge with a state or local equal employment agency before filing with the EEOC.  However, since the parties agree that the 300-day period applies in this case, we will accept this as a stipulated fact."

[4] The district court selected this date on the assumption that New York's three-year statute of limitations was tolled during the one year and one day that plaintiff's charge was pending before the EEOC.   It is clear that when a complaint has been filed with the New York Division of Human Rights "the Statute of Limitations is tolled until the administrative proceeding is terminated." Pan Am. Airways v. N.Y. Human Rights Appeal Bd., 61 N.Y.2d 542, 549 (1984). This Court "has yet to take a definitive stance on whether the statute of limitations for NYHRL claims is tolled while a plaintiff's charge is pending before the EEOC," although "[n]umerous district courts in the Circuit have . . . allowed for such tolling."  Senecal v. B.G. Lenders Serv. LLC, 2013 WL 5463400, *29, – F.Supp.2d – (N.D.N.Y. Sept. 30, 2013); see also Hanley v. Chicago Title Ins. Co., No. 12 Civ. 4418, 2013 WL 3192174, *8 (S.D.N.Y. June 24, 2013) (same).  We need not do so here, as neither party challenges the district court's calculation of the limitations period, and the result is the same regardless of whether tolling is applied.

There is no dispute that Sanderson's claims of disparate treatment and retaliation – both based on the 2009 discharge – are timely. NYSEG contends, however, and the district court found, that Sanderson's hostile work environment claim, insofar as it relied on harassing events occurring between 2002 and 2006, is untimely.[5] In particular, the district court concluded that Sanderson could not point to an act contributing to her hostile work environment claim that occurred within the statutory limitation period. On appeal, Sanderson contends that the hostile work environment she experienced between 2002 and 2006 continued in 2009. In particular, she points out that in September 2009, she was the "only scheduled worker who was required to take reassignment to the day shift," and in October 2009, she complained to her supervisor about the fact that the men had urinated in her presence when she previously worked on the day shift.

In order for a timely incident to prolong a hostile work environment created by earlier actions, the timely incident must be sufficiently related to the prior events so that they can be said to be part of the "same" hostile work environment. Morgan, 536 U.S. at 118 ("[I]f an act on day 401 had no relation to

---

[5] We assume without deciding that the conduct Sanderson describes as occurring between 2002 and 2006 was sufficient to constitute a hostile work environment.

the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts, at least not by reference to the day 401 act."); see also McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) ("Under Morgan, a sexually offensive incident within the limitations period permits consideration of an incident preceding the limitations period only if the incidents are sufficiently related.").  Moreover, while a harassing incident need not be overtly sex-based, there must be reason to believe that the act was motivated by the plaintiff's sex in order for the incident to contribute to a sexually hostile work environment.  Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex.  But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.").

The events Sanderson points to do not satisfy these standards.  First, there is no evidence that Sanderson's reassignment to the day shift was related to the earlier instances of harassment, or that it was based on her sex.  Sanderson does

9

not claim that the supervisors who directed her reassignment were among the perpetrators of her earlier harassment. Furthermore, Sanderson concedes that she was the only scheduled worker not already working on the day shift at the time of the 2009 reassignment, so the fact that she was the only worker reassigned does not suggest that she was treated differently than similarly situated male employees. Second, the fact that Sanderson complained in 2009 of the men's pre-2007 conduct cannot render a claim based on the earlier conduct timely. Were the rule otherwise, any claimant could circumvent the statutory limitations period simply by discussing incidents of harassment that occurred outside of the limitations period with her employer during the statutory limitations period.

Sanderson does not claim to have experienced any difficulties with her male co-workers – the perpetrators of the earlier instances of harassment – within the statutory limitations period, other than the men's snickering and under-the-breath comments. She was unable to identify the nature or content of those comments. Such occasional, unspecified *sotto voce* comments are too insubstantial to contribute to a hostile work environment, and thus to permit consideration of earlier instances of harassment. See McGullam, 609 F.3d at 76

10

(comment that was at most unrefined or uncivil, rather than "obscene or lewd, or even sexually suggestive" was "too trivial to contribute to a Title VII hostile work environment claim").  As a result, her hostile work environment claim is time-barred.

II. Disparate Treatment

In order to prevail on a claim of disparate treatment, a plaintiff must first make out a prima facie case, which entails a demonstration by the plaintiff that

> (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.

United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011).  "Once the prima facie case has been shown, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action."  Id. (emphasis and internal quotation marks omitted).  Upon fulfillment of this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's stated reason for the adverse employment action is pretext for discrimination.  Patterson, 375 F.3d at 221.

11

In the instant case, it is conceded that Sanderson is within a protected class, was qualified for the position of gas fitter, and experienced an adverse employment action when she was discharged from that position in November 2009. The district court found, however, that Sanderson failed to offer evidence from which a reasonable jury could conclude that the termination of her employment took place under circumstances giving rise to an inference of discrimination. We agree. Although many types of evidence may support an inference of discrimination, see Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d Cir. 1996), Sanderson offers no such evidence. She does not, for instance, contend that the decisionmakers responsible for her discharge made remarks exhibiting sex-based animus, or that similarly situated male co-workers who declined to return to work following an order to return were treated differently. Instead, she relies on the same allegations of harassment she proffered in support of her hostile work environment claim, as well as the fact that in September 2009 she was the only worker who was required to accept reassignment to the day shift.

Sanderson's reliance on these circumstances is not persuasive. First, Sanderson offers no evidence to suggest that the individuals who harassed her on

12

the day shift played any role in the decision to terminate her employment.  See

McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997) (finding that allegations

of bias against a supervisor who was not consulted about a termination decision

"provide no basis for imputing to [the decision maker] an invidious motivation

for the discharge"); cf. Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir.

1999) (Title VII may be violated "even absent evidence of illegitimate bias on the

part of the ultimate decision maker, so long as the individual shown to have the

impermissible bias played a meaningful role" in the employment decision).

Second, as discussed above, Sanderson has failed to demonstrate that, in

reassigning her to the day shift in 2009, NYSEG treated her differently than any

similarly situated male employee.  In light of the foregoing, the district court

properly granted summary judgment to defendant on Sanderson's disparate

treatment claim.

III. Retaliation

      "Title VII's antiretaliation provision forbids employer actions that

discriminate against an employee (or job applicant) because he has 'opposed' a

practice that Title VII forbids or has made a charge, testified, assisted, or

participated in a Title VII investigation, proceeding, or hearing."  Burlington N.

13

and Sante Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (internal quotation marks omitted); 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, "the plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." McMenemy v. City of Rochester, 241 F.3d 279, 282-83 (2d Cir. 2001). Once the plaintiff has presented a prima facie case of retaliation, "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretext for retaliation and that, more generally, the plaintiff's "protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v.Nassar, 133 S.Ct. 2517, 2534 (2013); see also Kwan v. Andalex Group LLC, 737 F.3d 834, 845-46 (2d Cir. 2013).

We assume *arguendo* that Sanderson established a prima face case of retaliation. However, NYSEG has offered a non-retaliatory reason for her discharge – namely, her refusal during the November 3, 2009 meeting to return to

14

work the following day – and Sanderson has failed to present evidence from which a reasonable jury could conclude that NYSEG's proffered reason is a pretext for retaliation. Sanderson insists that the temporal proximity between her complaint about sex-discrimination and her discharge – only a number of hours – is sufficient on its own to demonstrate that NYSEG's asserted reason is pretextual and her complaint was the but-for cause of her firing. She is mistaken. While temporal proximity alone may be sufficient to satisfy a retaliation plaintiff's prima facie burden, we have held that "temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010). Apart from temporal proximity, Sanderson offers no evidence that NYSEG's reliance on her insubordination as the reason for her discharge was a pretext for retaliation. Accordingly, the district court also properly granted summary judgment on plaintiff's claim of retaliation.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

15