No. 18-3279
James v. Van Blarcum

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 1st day of November, two thousand nineteen.

Present:     RALPH K. WINTER,
             ROSEMARY S. POOLER,
             MICHAEL H. PARK,
                     *Circuit Judges*.

_____

NORMAN L. JAMES, TYRONE BRODHEAD, ALPHONSO A. LACEY, PAMELA LANCASTER, TIMOTHY ROSS,

                     *Plaintiffs-Appellants*,

             v.                                              18-3279-cv

PAUL J. VAN BLARCUM, in his official capacity as Ulster County Sheriff and in his individual capacity, JON BECKER, in his official capacity as Warden of the Ulster County Jail and in his individual capacity, LOUIS RUSSO, in his official capacity as Warden of the Ulster County Jail and in his individual capacity, ULSTER COUNTY,

                     *Defendants-Appellees*.[1]

_____

Appearing for Appellant:     Nathaniel K. Charny, Charny & Wheeler, Rhinebeck, N.Y.
                             Stephen Bergstein, Bergstein & Ullrich, LLP, New Paltz, N.Y. (*on the brief*)

_____

[1] The Clerk of Court is directed to amend the caption as above.

Appearing for Appellee:     Earl T. Redding, Roemer Wallens Gold & Mineaux LLP, Albany
                            N.Y.

Appeal from the United States District Court for the Northern District of New York (Suddaby,
*C.J.*).

      **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,
AND DECREED** that the judgment of said District Court be and it hereby is **VACATED and
REMANDED in part and AFFIRMED in part**.

      Appellants Norman James, Tyrone Brodhead, Alphonso Lacey, Pamela Lancaster, and
Timothy Russo (collectively, "Appellants") appeal from the September 28, 2018 opinion and
order of the United States District Court for the Northern District of New York (Suddaby, *C.J.*),
granting defendants' motion for summary judgment as to their claims of a hostile work
environment under 42 U.S.C. §§ 1983, 1981.  We assume the parties' familiarity with the
underlying facts, procedural history, and specification of issues for review.

      The district court granted summary judgment after finding Appellants' claims were
untimely and that Appellants had "failed to adduce admissible evidence of severe and pervasive
conduct required to maintain a hostile work environment cause of action." *James v. Van
Blarcum*, No 16-cv-1065, 2018 WL 4625401, at *23 (N.D.N.Y. Sept. 26, 2018). We disagree.

      Appellants filed their complaint on August 30, 2016. As such, acts occurring before
August 30, 2012 or August 30, 2013 fall outside the statute of limitations for Section 1981 and
Section 1983, respectively. *See Duplan v. City of New York*, 888 F.3d 612, 619 (2d Cir. 2018).
"If a plaintiff has experienced a continuous practice and policy of discrimination, . . . the
commencement of the statute of limitations period may be delayed until the last discriminatory
act in furtherance of it." *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004)
(internal quotation marks and citation omitted). To prevail, it must be shown that "the acts about
which an employee complains are part of the same actionable hostile work environment" based
on their relatedness. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010)
(internal quotation marks omitted). Discrete acts are typically not subject to the continuing
violation doctrine unless they are "the result of a discriminatory policy or mechanism." *Lambert
v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993).

      Appellants allege that the Ulster County jail has a policy of tolerating racially offensive
comments in the workplace. *See Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001)
("[E]ven where there is no formal policy, the continuing violation theory may be used where
there have been specific and related instances of discrimination, and the employer has permitted
them to continue unremedied for so long that its inaction may reasonably be viewed as
tantamount to a policy or practice of tolerating such discrimination."). The racial comments
made within the limitations period and those made outside the period are sufficiently related for
the continuing violation doctrine to apply. The "colored girl" comment made by Sergeant
Polacco occurred in 2015. Other comments, such as the "Mandingo Hunter" reference, Officer
Bell's use of "nigger," and Wenzel's joke that "when you see a black man jogging, you know he

stole something," all occurred in 2014. There is evidence that similar comments were pervasive. These comments are related to others, such as Polacco's earlier use of "nigger" and Bell's use of "jigaboo" some time after 2007. Even those comments made outside the limitations period are sufficiently related to the timely allegations to be considered under the continuing violation doctrine. Other corrections officers, like Bell, or sergeants, like Polacco, made these comments, and they typically involved use of the same or similar derogatory terms or jokes. The continuing violation doctrine applies, making Appellants' claims timely as to the racial comments alleged. However, we affirm the district court's grant of summary judgment on the other acts deemed time-barred.

A hostile work environment claim is established when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). The conduct must be "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (internal quotation marks and citation omitted). "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997).

Appellants raised a question of material fact on whether a hostile work environment existed. The record is replete with evidence of racially derogatory language from coworkers and supervisors. There is little doubt that many, if not all, of the comments made---such as the naming of a police K-9 "Mandingo Hunter," Wenzel's joke about black men jogging, and Officer Brook's joke that black officers or "niggers" could not become sergeants---are egregious. Some of these comments, such as the references to Lancaster as "Buckwheat," were made by a sergeant. *See Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 439 (2d Cir. 1999) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as nigger by a supervisor in the presence of his subordinates." (internal quotation marks and citations omitted)). In addition, these comments were frequent. In total, there were at least twelve instances of racial slurs during the 2014-2015 and 2007-2008 period, though there is evidence that some of these comments had also been made previously or were made "constantly" and "all the time." The fact that these comments were not always directed at Appellants or were heard secondhand does not undermine their relevancy; whether they in fact contributed to a hostile work environment is a question for the jury. *Schwapp*, 118 F.3d at 111-12. Nor does the lack of reporting in some instances preclude summary judgment. *Rivera*, 743 F.3d at 21.

Taking these facts in the light most favorable to Appellants as we must, *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 83-84 (2d Cir. 2009), we cannot say that Appellants would be unable to prevail on a claim for a hostile work environment as a matter of law. As a result, we need not reach the question of whether those timely race-neutral acts Appellants have alleged can support a hostile work environment.

3

The district court also concluded there is no municipal or individual liability. We affirm the court's conclusions as to individual liability, but we vacate as to municipal liability.

In order for a Section 1983 or Section 1981 action claiming discrimination to be maintained against a municipality or individual in their official capacity, the allegedly discriminatory acts must have been performed pursuant to a municipal policy or custom. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). It is sufficient to show that "a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id*. (internal quotation marks and citations omitted). Inaction and acquiescence may allow harassment to become custom and practice. *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 63 (2d Cir. 2014).

Defendants argue that incidents were either never reported or, once reported, were fully investigated and addressed. However, there is no evidence that after Appellants reported a number of incidents, such as Wenzel's inappropriate comments and Ross's complaints, anyone spoke with the officers who made these comments. The fact that a couple of incidents were investigated does not absolve the county of liability when the bulk of reported instances went unaddressed. *Snell v. Suffolk County*, 782 F.2d 1094, 1105 (2d Cir. 1986). Furthermore, while in a limited number of instances Appellants did not report slurs, County Personnel Director Sheree Cross did learn of some of these incidents. There is no evidence she investigated, and awareness followed by a failure to act can result in a finding of liability. *Matusick*, 757 F.3d at 63. Finally, when Ross reported derogatory language to his supervisors, they brushed off the incidents, and James and Lacey also testified that they felt their complaints would be futile; we have previously considered such justifications for not reporting as well. *See Snell*, 782 F.2d at 1105 n.13. Thus, given the failure to investigate here, the evidence taken in the light most favorable to Appellants is sufficient to raise a question of material fact as to municipal liability.

We agree with the district court that Appellants failed to adduce sufficient evidence to raise a question of material fact as to individual liability. There is no evidence that defendants harbored racial animus or were aware of the racially derogatory language. While Becker and Russo may have known about one or two comments, such a limited number is insufficient to raise awareness of the extent of the issue. *See Raspardo v. Carlone*, 770 F.3d 97, 115-16 (2d Cir. 2014) (citations omitted).

We have considered the remainder of Appellants' arguments and find them to be without merit. Accordingly, the order of the district court hereby is VACATED and REMANDED in part and AFFIRMED in part. We remand to the district court for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4