14-4315-cv
Dawson v. New York City Transit Authority

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of September, two thousand fifteen.

PRESENT:    PIERRE N. LEVAL,
            RAYMOND J. LOHIER, Jr.,
            CHRISTOPHER F. DRONEY,

*Circuit Judges.*

-----------------------------------------------------------------------
MICHAEL DAWSON,
                    *Plaintiff-Appellant*,

                    v.                                          No. 14-4315-cv

NEW YORK CITY TRANSIT AUTHORITY,
                    *Defendant-Appellee*.


-----------------------------------------------------------------------

FOR APPELLANT:              JOSH BERNSTEIN, Josh Bernstein, P.C., New York, New York.

FOR APPELLEE:               ROBERT K. DRINAN, Assistant General Counsel (Lewis S. Finkelman, General Counsel, Lisa A. Gilbert, Law Fellow, *on the brief*), New York City Transit Authority, Brooklyn, New York.

Appeal from a judgment of the United States District Court for the Southern District of

New York (Gregory H. Woods, *Judge*).

14-4315-cv
Dawson v. New York City Transit Authority

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 21, 2014, is VACATED and REMANDED.

Plaintiff Michael Dawson appeals from the Rule 12(b)(6) dismissal of his complaint, which alleged that Dawson's employer, Defendant New York City Transit Authority ("NYCTA"), discriminated against him on the basis of his epilepsy, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the New York City Human Rights Law ("NYCHRL"). Plaintiff, a NYCTA station agent who unsuccessfully sought a "title restoration" to his former position of train operator, argues that the district court erred in finding that he had not adequately alleged an adverse employment action and, in the alternative, that he had not pled sufficient facts to give rise to an inference of discriminatory motivation. We review a Rule 12(b)(6) dismissal *de novo*, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to vacate the judgment and remand.

1. Pleading Disability Discrimination

The ADA prohibits discrimination against "a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112(a). Claims alleging such discrimination are subject to the *prima facie* case framework elaborated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*,

2

530 U.S. 133 (2000). *See Littlejohn v. City of New York*, No. 14-1395-cv, 2015 WL 4604250, at *4 (2d Cir. Aug. 3, 2015) (applying the Court's Title VII jurisprudence to ADA claims). Under this framework, if a plaintiff can show (1) that she is a member of a protected class, (2) that she was qualified for employment in the position, (3) that she suffered an adverse employment action, and (4) that there is some minimal evidence supporting an inference that her employer acted with discriminatory motivation, such a showing will raise a temporary presumption of discriminatory motivation. The burden of production then shifts to the employer, who must come forward with its justification for the adverse employment action against the plaintiff. *See St. Mary's*, 509 U.S. at 506-07; *Burdine*, 450 U.S. at 253-54. The purpose of this framework is to discourage early-stage dismissal of employment discrimination cases without the employer ever having to set forth its legitimate reasons for the adverse action taken against the plaintiff. *Littlejohn*, 2015 WL 4604250, at *4. Accordingly, the burden that a plaintiff must satisfy in order to establish her initial *prima facie* case has been described as "not onerous," *Burdine*, 450 U.S. at 253, and "minimal and *de minimis*," *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citations omitted).

Because the Supreme Court developed the *McDonnell Douglas* framework in the context of decisions reviewing grants of summary judgment and trial verdicts, the framework's effect on the requirements for successfully *pleading* a Title VII or ADA case has long remained unclear. While in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), the Supreme Court held that the initial *prima facie* standard is "not a pleading requirement," but rather "an evidentiary standard," *id.* at 510, that decision predated the Court's turn from notice to fact pleading in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (citation omitted)). As a result, the

3

*Swierkiewicz* Court's ruling that a Title VII complaint need only "give the defendant fair *notice* of what the plaintiff's claim is and the grounds upon which it rests," 534 U.S. at 512 (emphasis added) (citation omitted), does not furnish a clear answer to the questions whether *Iqbal*'s "plausibility" requirement applies to employment discrimination cases and, if so, how.

Our court has recently answered those questions. *See Littlejohn*, 2015 WL 4604250, at *6-8. There, we held that *Iqbal*'s requirement applies to Title VII complaints of employment discrimination, but does not negate the presumption pronounced in the *McDonnell Douglas* quartet. "To the same extent that the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*." *Id.* at *7. Accordingly, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at *8. The allegations "must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."[1] *Id.* They need not, however, give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination."[2] *Id.*

---

[1] In *Littlejohn*, our court also emphasized that *Iqbal*'s plausibility requirement should not be elevated to a "probability requirement." *Id.* at *7 (quoting *Iqbal*, 556 U.S. at 678). While allegations must support "more than a sheer possibility that a defendant has acted unlawfully," they need not be sufficient to make it likely that the plaintiff would prevail on the merits if she proved those allegations to be true. *Id.*

[2] Once the defendant has stated its reason for the adverse employment adverse action, the presumption that arises in the plaintiff's favor under *McDonnell Douglas* disappears. The plaintiff will thereafter need evidence sufficient to support a reasonable finding of discriminatory motivation to defeat a properly supported motion of summary judgment or to prevail at trial.

We apply this standard in reviewing the district court's dismissal of Plaintiff's ADA complaint.

2. Adverse Employment Action

To qualify as an adverse employment action, the employer's action toward the plaintiff must be "materially adverse" with respect to "the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation omitted). We have no bright-line rule to determine whether a challenged employment action is sufficiently "adverse" to serve as the basis for a claim of discrimination. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d. Cir. 1997).

The district court gave two reasons for finding that Plaintiff failed to allege sufficient facts to establish an adverse employment action. First, construing the alleged adverse employment action as a denial of a request for reinstatement, the district court held that the ADA does not recognize such a denial as an adverse employment action, but rather as a "collateral attack" on an earlier employment action – in this case the initial 2005 decision to remove Plaintiff from his position as train operator. This was error. It is true that Plaintiff's complaint repeatedly characterized his pursuit of a transfer from station agent to train operator as, among other things, a "request for reinstatement." *See* J.A. 12-14. It is also true, as the district court noted, that "[c]ourts distinguish between a new application for employment and a demand for reinstatement which seeks to redress the original termination." J.A. 187 (citation omitted). But Plaintiff is manifestly *not* trying to "redress [an] original termination." He does not contest the validity of his medically indicated reclassification from train operator to station agent in 2005, a

*Littlejohn*, 2015 WL 4604250, at *4 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 519; *Burdine*, 450 U.S. at 256).

5

reclassification to which he consented. Rather, Plaintiff challenges Defendant NYCTA's refusal to consider subsequent developments in his medical condition that could make him newly eligible for classification as a train operator.

The district court quotes at length from a 1954 Third Circuit decision to the effect that "[a] discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer." J.A. 188 (quoting *NLRB v. Textile Mach. Works*, 214 F.2d 929, 932 (3d Cir. 1954)). But even if this decision were binding in our circuit, Plaintiff is not in fact disputing the unfairness of his original discharge; nor is it the case that "only if the original discharge was discriminatory is he entitled to be reinstated."

In its own Position Statement to the New York State Division of Human Rights, Defendant explained that "Dawson was not terminated from employment [in 2005] but reclassified (with his consent) . . . because he was not medically able to safely perform the functions of a train operator." J.A. 89. Just as Plaintiff was reclassified in 2005 "because he was not medically able to safely perform the functions of a train operator," Plaintiff now seeks a reclassification because he has allegedly become "medically able to safely perform the functions of a train operator." The ADA's text and legislative history suggest that the employer's failure to consider such an application is within the statute's concern.[3]

---

[3] The law seeks to protect not just individuals who have "a physical or mental impairment that substantially limits one or more major life activities," but also those individuals who have "a record of such an impairment," or who are "*regarded as having* such an impairment." 42 U.S.C. § 12102(1) (emphasis added). As the Senate explained upon passing the ADA, one "important goal . . . of the [disability] definition is to ensure that persons with medical conditions that are *under control*, and that therefore do not currently limit major life activities, are not discriminated against on the basis of their medical conditions. *For example, individuals with controlled diabetes or epilepsy are often denied jobs for which they are qualified.*" S. Rep. No. 101-116, at 24 (1989) (emphases added).

The district court also held that Plaintiff failed to allege that he actually applied for the job of train operator, and therefore cannot establish a "failure to hire, promote, or recall" adverse employment action. J.A. 189. The district court reached this conclusion in part because it limited its review to facts alleged to have occurred no more than 300 days prior to Plaintiff's filing of his disability discrimination complaint with the EEOC. It is true that the alleged adverse employment action must have occurred within the 300-day statutory limitations period for ADA claims. *See* 42 U.S.C. § 12117; *id.* § 2000e-5(e)(1); 29 C.F.R. § 1601.13; *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010). But this limitations period cannot sensibly be read to require that the plaintiff have *applied* for a job, promotion, or transfer no more than 300 days prior to filing his EEOC complaint. If the employer's adverse employment action occurred in the actionable time period, the fact that the plaintiff's application was made prior to the actionable period is irrelevant. Indeed, if the district court's interpretation of the law were correct, an employer could render itself immune from suit for a discriminatory denial of an application or request simply by waiting 300 days before making the denial.

In the instant case, Plaintiff has alleged in detail the extensive steps he took (including steps taken within the 300-day window) to secure "title restoration" as a train operator, a position with higher pay and more responsibilities than his current position of station agent. J.A. 13-14, 23-24, 26-28. Whether construed as an application for a job or, more intuitively, a request for promotion or transfer, Plaintiff sufficiently alleged that he applied.

In reaching the opposite conclusion, the district court relied on *Velez v. Janssen Ortho, LLC,* 467 F.3d 802, 807 (1st Cir. 2006), which stated that "general letters . . . expressing interest in any available job" cannot be the predicate for a failure to hire case. That First Circuit

decision, in turn, relied on our Circuit's decision in *Brown v. Coach Stores, Inc.*, 163 F.3d 706

(2d Cir. 1998). There, our court wrote:

> We read *McDonnell Douglas* and *Burdine* generally to require a plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion. . . . We do recognize, however, that the pleading requirements in discrimination cases are very lenient, even *de minimis*. Thus, the general rule of *McDonnell Douglas* and *Burdine* is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement.

*Id.* at 710.

As alleged in the instant case, Plaintiff did face something like a "quixotic" situation, in which even his attempts to *begin* the process of "title restoration," such as attempts to secure a NYCTA medical examination, were rebuffed. In contrast to the plaintiffs discussed in *Velez* and *Coach Stores*, the instant Plaintiff has alleged a four-year campaign of letter-writing, phone calls, and in-person meetings to secure a medical evaluation and restoration to his previous position. Furthermore, Plaintiff has alleged that Defendant's agents represented to him on multiple occasions that they were aware of his request and were considering it, belying the conclusion that Plaintiff's campaign was insufficiently specific or definite.

After nearly two months of inaction in response to his final, discrete attempt to secure "title restoration," Plaintiff filed his discrimination complaint with the EEOC. Subsequently, Defendant confirmed in its Position Statement to the New York State Division of Human Rights what Plaintiff had feared: that the NYCTA was refusing to consider him for reclassification as a train operator because of his history of epilepsy. Whether or not one considers Defendant's Position Statement itself to be an adverse employment action "reasonably related" to earlier

8

adverse conduct,[4] Defendant's previous months-long inaction on Plaintiff's multiple requests for title restoration is a plausible adverse employment action in its own right, one that occurred less than 300 days before Plaintiff filed his administrative complaint. We acknowledge that, ordinarily, our precedent requires that a plaintiff allege that he applied for a specific job opening, unless "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004). However, on the specific facts alleged in this case, which include Plaintiff's prolonged efforts to regain a position he previously held, Defendant's repeated representation that those requests were under consideration, and Defendant's admission that its decision turned on Plaintiff's history of epilepsy (as opposed to an absence of available positions), it is reasonable to infer that any application for a particular vacancy would have been futile. We therefore cannot conclude, on these alleged facts, that Plaintiff has failed to plausibly allege that he suffered an adverse

---

[4] The court below concluded that Defendant's Position Statement, which for the first time formally rejected Plaintiff's request for reclassification, could not be considered as part of the adverse employment action inquiry because the Position Statement was filed *after* Plaintiff lodged his administrative complaint, and thus Plaintiff had not exhausted his administrative remedies with respect to the Position Statement itself. J.A. 187 n.1. This conclusion is counterintuitive. Plaintiff filed his administrative complaint because he believed his employer was denying him an opportunity for promotion or transfer based on his disability. That denial occurred by way of omission until March 2013, when the NYCTA filed its Position Statement, confirming through action what Plaintiff alleged was already occurring through inaction in his administrative complaint. The Position Statement is thus "reasonably related" to the administrative complaint Plaintiff filed in August 2012. *See Stewart v. U. S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d Cir. 1985); *Almendral v. N.Y. State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984). The district court's approach would incentivize discriminatory employers simply to delay action on employment requests until after the employee or would-be employee filed administrative charges.

employment action.[5]

2. Inference of Discrimination

The district court's second ground for dismissing Plaintiff's complaint was that "Mr. Dawson has not pleaded sufficient facts to give rise to an inference that the action occurred because of his disability." J.A. 190. As discussed above, the evidentiary burden that a plaintiff must satisfy in order to survive an employer's *summary judgment* motion, made prior to the showing of a legitimate justification for the adverse employment action, is "minimal and *de minimis*." *Woodman*, 411 F.3d at 76 (citation omitted). At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face even *after* they have survived a motion to dismiss. *See Littlejohn*, 2015 WL 4604250, at *8 ("The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification."). In the instant case, Defendant has *admitted*, both during the administrative action and this present litigation, that its refusal to grant Plaintiff's request for reclassification is premised on his disability. J.A. 93 ("Given his history, diagnosis and prognosis, [Plaintiff] is not medically qualified to be a train operator."). To infer that Defendant's earlier inaction on Plaintiff's request for reclassification is unrelated to its subsequent assessment of his disability, as the district court did, is to make an unreasonable inference in Defendant's favor, which is inappropriate on a motion to dismiss.

3. Qualification for the Position

----

[5] One of Plaintiff's letters states that "[o]n or about August 2010, I met with & spoke to union rep Jose Lagoa. He said as far as T/A [NYCTA] was concerned, the case is closed. I asked for that decision in writing & as to why it was made. He refused to give me any documents stating such." J.A. 24. Although, at this stage, a statute-of-limitations defense would require impermissibly drawing inferences against the Plaintiff, the evidence may end up establishing such a defense later on.

Dismissing Plaintiff's complaint for want of an adequately alleged adverse employment action or inference of discrimination, the district court did not reach the further disputed question whether Plaintiff was "otherwise qualified to perform the essential functions of his job with or without reasonable accommodation." J.A. 185-86. Whether Plaintiff will be able to show at summary judgment or trial that he is so qualified is certainly an open question. But Plaintiff has pled particularized and plausible facts to that effect, including four letters from his neurologist stating that his condition no longer contraindicates work as a train operator, one of which makes explicit reference to the NYCTA's own medical standards for train operators. The ADA seeks to protect not just individuals who have "a physical or mental impairment that substantially limits one or more major life activities," but also those individuals who have "a record of such an impairment," or who are "regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also supra* note 3. To dismiss Plaintiff's complaint on the ground that he has not plausibly alleged that he is qualified for the position of train operator would be to deny the truthfulness of Plaintiff's allegations, or to refuse to draw all reasonable inferences in his favor. Neither we nor the district court may do so.

4. <u>Conclusion</u>

We have considered the remaining arguments for affirmance and conclude that they are without merit. We therefore VACATE the judgment of the district court and REMAND for further proceedings consistent with this order. On remand, we leave it to the district court to decide whether to exercise supplemental jurisdiction over Plaintiff's NYCHRL claim.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK