**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2015

(Argued:      April 12, 2016                    Decided:      July 29, 2016)

Docket Nos. 15-1536 (Lead), 15-1661 (XAP)

-------------------------------------------------------------X

JOHN DOE

*Plaintiff-Appellant-Cross-Appellee*,

v.

COLUMBIA UNIVERSITY, THE TRUSTEES OF COLUMBIA UNIVERSITY

*Defendants-Appellees-Cross-Appellants*.

-------------------------------------------------------------X

Before:      LEVAL, DRONEY, Circuit Judges; KOELTL, District Judge.[1]

Plaintiff John Doe appeals from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*), which granted Defendant Columbia University's motion to dismiss Plaintiff's complaint for failure to state a sufficient claim. The complaint alleged that Defendant violated Title IX of the Education Amendments of 1972 and state law by practicing sex bias in disciplining him for an alleged sexual assault. The complaint meets the low burden of alleging facts supporting a minimal plausible inference of bias. We therefore vacate the judgment and remand.

VACATED and REMANDED.

---

[1] The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

PHILIP A. BYLER, NESENOFF & MILTENBERG, LLP, New York, NY, (Andrew T. Miltenberg, *on the brief*), for *Plaintiff-Appellant-Cross-Appellee.*

PAUL R.Q. WOLFSON, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, DC, (Bruce M. Berman, Saurabh Sanghvi, Alan E. Schoenfeld, *on the brief*), for *Defendants-Appellees-Cross-Appellants.*

Leval, *Circuit Judge*:

Plaintiff, a Columbia University student who is identified by the pseudonym John Doe, appeals from the judgment of the United States District Court for the Southern District of New York (Furman, *J.*), dismissing his amended complaint ("the Complaint") under Fed. R. Civ. P. 12(b)(6) "for failure to state a claim on which relief can be granted." The Complaint alleges that Defendant Columbia University[2] violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), and state law, by acting with sex bias in investigating him and suspending him for an alleged sexual assault. We conclude that the Complaint meets the low standard described in *Littlejohn v. City of New York*, 795

---

[2] Although the Trustees of Columbia University are also Defendants in this action, we generally use "Defendant" hereinafter to refer to Columbia University.

2

F.3d 297 (2d Cir. 2015), of alleging facts giving rise to a plausible minimal inference of bias sufficient to survive a motion to dismiss, which we hold applies in Title IX cases. We therefore VACATE the judgment and REMAND.

## I.        Factual Background

On a motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim, the only facts to be considered are those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010). Furthermore, the plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims . . . as it has, regardless of consistency."); *Gregory v. Daly*, 243 F.3d 687, 701 n.12 (2d Cir. 2001). Needless to say, the facts a plaintiff alleges in the complaint may turn out to be self-serving and untrue. But a court at this stage of our proceeding is not engaged in an effort to determine the true facts. The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim. For that reason, the court, in judging the sufficiency of the complaint, must accept the

facts alleged and construe ambiguities in the light most favorable to upholding the plaintiff's claim. If the complaint is found to be sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the truth of the plaintiff's allegations and to offer its own version. In light of those rules, we set forth below facts alleged in Plaintiff's Complaint in the light most favorable to him, drawing reasonable inferences in his favor.

### a. The Sexual Encounter between Plaintiff and Jane Doe

On the night of May 12, 2013, Plaintiff, a male Columbia freshman who upon completing his freshman year became a varsity athlete, was studying for a final exam in his residence hall. At approximately 1:00 a.m. a female classmate and member of the same circle of friends, identified in this litigation by the pseudonym Jane Doe, approached him and initiated a conversation. They took an hour-long walk together, and eventually began discussing the topic of "hooking up." The Complaint alleges that, in the interest of privacy for a sexual encounter, Jane suggested using the bathroom of her dormitory's suite. She insisted on using her suite rather than his because her ex-boyfriend was Plaintiff's roommate. She told Plaintiff to wait in the bathroom while she went to her bedroom to retrieve a condom. She then undressed herself in the bathroom, and they proceeded to have

4

sex. Over the next two weeks, Jane contacted Plaintiff twice to express doubts about how their friends would react.

### b. Jane Doe's Complaint and Defendant's Investigation

After the start of the next school year, on September 24, 2013, Rosalie Siler, Defendant's Assistant Director for Gender-Based and Sexual Misconduct, contacted Plaintiff to inform him that a fellow student had made allegations of sexual assault against him, and advised him to come in for a meeting. The next day, Plaintiff met with Siler, who gave him a formal written notice that he was charged with "Non-Consensual Sexual Intercourse" in violation of the school's Gender-Based Misconduct Policies for Students ("GBMPS"), which established procedures for responding to allegations of sexual assault on campus. He was told that, as a consequence of Jane Doe's accusation, the University had issued an order barring him from contact with her and restricting his access to residence halls on campus. Although Plaintiff was advised that he was entitled to access the on-campus Counseling & Psychological Services, he was not advised of other sources of support during the disciplinary process.

Plaintiff was summoned to meet on September 25, 2013, with the Columbia Title IX investigator, Jilleian Sessions-Stackhouse, who Plaintiff alleges, referring to her prior experience, was not gender neutral. In her role as Title IX investigator,

Sessions-Stackhouse was "charged with creating the narrative account that is eventually adopted by the [disciplinary] panel." A 90. Plaintiff told Sessions-Stackhouse that the encounter had been consensual and that there had been witnesses at the residence hall lounge that night who could be helpful. The Complaint alleges that Sessions-Stackhouse's response was hostile. She did not ask him about the witnesses, interview them, or follow up with them in any way.[3] According to Plaintiff, "[a]t all times, [he] was under the impression that Ms. Sessions-Stackhouse would investigate and follow up on [his] account of the evening once he conveyed his side of the story; [but] as it turns out, that never happened." A 89.

According to the Complaint, Sessions-Stackhouse's questioning of Plaintiff was akin to cross-examination calculated to elicit a confession. She failed to tell him he could submit his own written statement to her or to the disciplinary panel, and failed also to advise him that he was entitled to seek the support of a student advocate. Nor did she advise him of resources available to him to aid him in the process.

---

[3] The Complaint later acknowledged that Sessions-Stackhouse interviewed at least one witness identified by Doe.

Plaintiff alleges in contrast, upon information and belief, that, in meeting with Jane Doe, Sessions-Stackhouse took a narrative account without leading questions and without hostility, giving Jane thorough advice as to the resources available to her. The interviews conducted by Sessions-Stackhouse were not recorded. She took handwritten notes.

On October 21, 2013, Plaintiff reported to Siler that Jane Doe's friends had harassed and assaulted him on campus. Siler "did not take [his] complaint . . . seriously." A 91-92.

On October 22, 2013, Plaintiff met with Sessions-Stackhouse to review her notes from their previous meeting. He "observed that [her] notes inaccurately and inadequately paraphrased [Plaintiff's] verbal account of the events." A 92. On January 25, 2014, Plaintiff met with Interim Assistant Director, Deputy Title IX Coordinator Virginia Ryan (Siler's replacement) to review Sessions-Stackhouse's report.

According to the Complaint, the report falsely depicted Plaintiff as having inflicted nonconsensual sex on Jane Doe, by virtue of having coercively pressured her over a period of weeks to have sex with him.[4] The report showed that Sessions-

---

[4] While the Complaint does not explicitly allege what Sessions-Stackhouse wrote in her

Stackhouse had disregarded Plaintiff's account of Jane Doe's clearly expressed consent, and failed to reconcile Jane's account with conflicting information provided to Sessions-Stackhouse by India Knight, who was a friend of Jane's, about Jane's motivation on May 12. The report also allegedly failed to include statements of persons, including Jane's roommate, "who had occasion to witness Jane Doe in the weeks before" the encounter as well as on that night. A 104-05, 95. Plaintiff attempted to correct Sessions-Stackhouse's mistakes. Ryan gave Plaintiff a form to state his response, which he completed and returned on January 29, 2014.

Soon thereafter, Ryan provided Plaintiff with a hearing date of February 12 and gave him a list of the panelists. According to Plaintiff, at no point during the investigative process did Sessions-Stackhouse, or any administrator, advise him that he was entitled to seek advice and counsel from his Dean of Students.

### c. Criticisms of Columbia Among Students and in the Press for its Previous Lenient Handling of Sexual Assault Complaints

In the period preceding Plaintiff's disciplinary hearing, Columbia students had expressed concern that the University did not take seriously the complaints of female students about sexual assaults by male students. Various student

---

report, it can be fairly inferred that the report took the position that Plaintiff coerced Jane into sex by weeks of pressure, and that her participation was deemed to be without consent by reason of the prior pressure.

organizations had "alleged that the school [was] not being firm enough in the disciplinary process" in cases involving accusations by female students of sexual misconduct by male students. A 97. This controversy reached the press. On December 11, 2013, a New York Post article declared, "Columbia drops ball on jock 'rapist' probe: students." *Id.* The article quoted several female students asserting that Columbia had mishandled their sexual assault complaints, failing to act with expediency in investigating, giving lenient sanctions, and conveying an overall tenor of "dismissal" with regard to the serious nature of the complaints. The article stated that the University's Presidential Advisory Committee on Sexual Assault intended to schedule a meeting with the Columbia University Student Democrats to learn more directly about student concerns and explore possible next steps.

On campus, the Columbia University Democrats had criticized the University's handling of sexual assault complaints and called for reforms. Sarah Weinstein, the Membership Director of that student organization, had written opinion articles calling for increased transparency at the school, and had spearheaded a petition to request statistics on sanctions issued by Defendant in sexual assault cases. Referring to reports that Yale University had given light punishments to male students found to have raped or assaulted female students,

Weinstein was quoted in articles as saying, "[W]e want to make sure that what's happening at Yale isn't happening here at Columbia." A 98.

On January 23, 2014, an independent, student-run newspaper criticized Columbia's handling of sexual assault complaints, discussing the experiences of three alleged sexual assault victims "in an effort to highlight how the university's internal investigation allowed [an] accused student athlete to escape punishment." The articles particularly criticized Sessions-Stackhouse for "inadequate investigation[s]." A 99. In February 2014 (close to the time of Plaintiff's hearing) Columbia University President Lee Bollinger promised to hold a Town Hall meeting on the school's handling of sexual misconduct. Columbia Dean James Valentini was scheduled to attend the meeting.

On April 24, 2014, twenty-three students filed complaints with the United States Department of Education for violations of Title IX and other laws, alleging that Defendant mishandled incidents of sexual assault and misconduct on campus.

**d. Columbia's Policies for Addressing Sexual Assault**

Columbia's policy on gender-based misconduct (the GBMPS) provided that a student accused of sexual assault would be given notice of the complaint and written notice of the allegations, as well as an opportunity to meet with the Assistant Director for Student Services for Gender-Based and Sexual Misconduct

to review the GBMPS policy and procedures. A specially trained Title IX investigator (Sessions-Stackhouse) would then interview "the complainant, respondent, and any witnesses," "gather any pertinent documentation," and "prepare a report detailing the relevant [findings]." A 178. If the investigator found "reasonable suspicion," then the respondent and complainant would "each have the opportunity to review the investigative report and . . . documentation." A 179. If the respondent denied responsibility or did not respond, a hearing panel would be convened.

Hearings were to be closed proceedings. The hearing panels, when practicable, would consist of two deans and/or senior-level administrators and one student drawn from a specially trained pool. A party could challenge a panelist's participation in writing. During the hearing, only the panel would call and question parties and witnesses, but parties could submit questions, which the panel would have discretion to decline to ask if it found them irrelevant or duplicative. Panels were to base their decisions on a "preponderance of [the] evidence" standard of proof. A 181. Decisions were to be made within five business days, and the Dean of Students would render a decision five business days later. Sanctions could range from a warning to suspension to full dismissal. Respondents had the right to an appeal.

11

### e. The Disciplinary Hearing and Plaintiff's Suspension

Plaintiff's disciplinary hearing took place on February 12, 2014, before three panelists—the Director of the Office of Disability Services at Barnard College, the Associate Director for Residential Life and Housing at Barnard College, and a graduate student at the Columbia School of Public Health. Ryan and her assistant were also present. Plaintiff brought his roommate. Jane Doe was accompanied by Weinstein, who had been among the most vocal critics of the University's prior handling of rape complaints. Weinstein was not Jane's friend, and had no prior relationship with her. Columbia's rules did not allow the accused student legal representation.

There were three rooms set up for the hearing—one for the panelists, one for Plaintiff, and one for Jane Doe. In each room, a television was set up with a live video feed of the hearing so that each participant had the opportunity to watch at all times.

At the start of the hearing, the panelists asked Plaintiff to make a statement. Because Sessions-Stackhouse allegedly had not told Plaintiff he would be called on to make a statement, he had nothing prepared and merely stated that he "did nothing wrong." A 101-02.

At the hearing, the panel considered Sessions-Stackhouse's report, which did not include reference to witnesses who could have supported Plaintiff's defense, allegedly because Sessions-Stackhouse had declined to follow the leads Plaintiff had given her. The panel did not call witnesses who could have supported Plaintiff's defense. Plaintiff submitted questions to the panelists to be put to Jane Doe, but they did not allow him to exhaust his list, asserting that the questions were "irrelevant." A 103.

The hearing lasted less than two hours. The panelists found Plaintiff "Responsible" for the charge of "sexual assault: non-consensual sexual intercourse." A 104. Although Plaintiff denied having coerced Jane Doe and alleged that no evidence was presented in support of such coercion, the panel found that Plaintiff had "directed unreasonable pressure for sexual activity toward the Complainant over a period of weeks" and that "this pressure constituted coercion [so that] the sexual intercourse was without consent." A 104.

On February 26, 2014, Plaintiff was informed that Columbia was issuing an order of suspension until Fall 2015. Because the University refused to give Plaintiff credit for his Spring 2014 classes, the suspension was functionally equivalent to one and one half years. Plaintiff stated that on the same day, he saw

Jane Doe, who called out to him that she was "sorry" and that she was going to get his punishment lessened. A 105.

Plaintiff was advised of his right to appeal within five business days. On March 3, 2014, Plaintiff appealed, citing, among other things, Sessions-Stackhouse's failure to interview key student witnesses. Jane Doe also submitted an appeal to reduce the severity of Plaintiff's punishment.

On March 10, 2014, Dean Valentini denied Plaintiff's appeal, explaining in part that Sessions-Stackhouse's failure to interview "key witnesses" identified by Plaintiff was within her discretion, that such witnesses were "not raised with Ms. Sessions-Stackhouse and were 'raised for the first time on appeal,'" and that Plaintiff's coercive behavior "was committed outside the purview of other witnesses, and, thus, such witnesses' testimonies were insufficient." A 107. The Dean concluded that the sanction was appropriate because sexual assault is an egregious offense. Dean Valentini's denial of Plaintiff's appeal occurred four days prior to the University-wide meeting for discussion of the school's handling of such complaints, which the Dean was scheduled to attend.

### f.  Proceedings Below

Plaintiff filed his suit on June 9, 2014, alleging that Columbia subjected him to sex discrimination in violation of Title IX and state law. The Complaint seeks

both damages and expungement of his disciplinary record. It alleges that Sessions-Stackhouse, in the role of the University's supposedly neutral Title IX investigator, was motivated by pro-female sex bias, attributable in part to a desire to refute criticisms of herself and of the University for their past handling of similar complaints, to perform her duties in a manner that discriminated against the accused male. The Complaint alleges that she conducted a sex-biased and deficient investigation that was hostile to his claim, failed to carry out her duty to interview his witnesses and explore channels that could be helpful to him, failed to advise him of his rights, and drew unfair and incorrect conclusions against him in her report to the adjudicatory panel. The Complaint alleges also that the University's decision-makers (the panel and the Dean), seeking to protect the University from criticism both among students and the public to the effect that it was not taking women's sexual assault complaints seriously, took a pro-female, sex-biased stance on Jane Doe's allegations, leading them to decide against him, incorrectly and contrary to the weight of the evidence.

The district court granted Columbia's motion to dismiss the federal law claims. The court also "declin[ed] to exercise supplemental jurisdiction" over Plaintiff's state-law claims. A 223. Plaintiff then brought this appeal.

**DISCUSSION**

**I. Title IX**

Title IX's relevant portion provides, "No person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or *be subjected to discrimination* under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphases added). This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994). Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to "bar[] the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Id.* at 715.

**II. Standard of Review**

A court of appeals reviews *de novo* a district court's grant of a motion under Rule 12(b)(6) to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Littlejohn*, 795 F.3d at 306.

### a. Standard for Judging the Sufficiency of a Complaint Alleging Discrimination under Title IX

In a series of cases beginning with *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[5] the Supreme Court ruled that, in suits alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and related statutes, until the defendant furnishes a nondiscriminatory reason for the adverse action it took against the plaintiff, the plaintiff needs to present only minimal evidence supporting an inference of discrimination in order to prevail. *See McDonnell Douglas*, 411 U.S. at 802.

As set forth in our recent explanation of *McDonnell Douglas*'s standard,

> [I]n the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation . . . . If the plaintiff can show (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation,[6] such a showing

---

[5] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

[6] The "minimal evidence suggesting an inference that the employer acted with discriminatory motivation" can be satisfied by as little as a showing that the position sought by the plaintiff remained open after plaintiff's rejection and that the employer

will raise a temporary "presumption" of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff. However, once the employer presents evidence of its justification for the adverse action, joining issue on plaintiff's claim of discriminatory motivation, the presumption "drops out of the picture" and the *McDonnell Douglas* framework "is no longer relevant." At this point, in the second phase of the case, the plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her.

*Littlejohn*, 795 F.3d at 307-08 (internal citations omitted).

With respect to the sufficiency of federal complaints generally, the

Supreme Court ruled in *Ashcroft v. Iqbal*, 556 U.S. 662, (2009),[7] that a

complaint must plead specific facts sufficient to support a plausible

inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

While "[t]he plausibility standard is not akin to a 'probability requirement,' .

. . it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.*

---

continued to seek applicants from persons of plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802.

[7] *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

In *Littlejohn*, we clarified that *Iqbal* applies to employment-discrimination complaints brought under Title VII. "To the same extent that the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*." *Littlejohn*, 795 F.3d at 310. Because "[t]he discrimination complaint, by definition, occurs in the first stage of the litigation . . . the complaint also benefits from the temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent." *Id.* at 311.

In other words, at the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff.[8]

---

[8]For this reason, we have often vacated 12(b)(6) and 12(c) dismissals of complaints alleging discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (vacating 12(c) dismissal of Title VII claim because the district court held Plaintiff to overly stringent pleading standards); *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order) (vacating 12(b)(6) dismissal of Plaintiff's complaint); *Azkour v. Bowery Residents' Comm., Inc.*, 2016 WL 1552367, *2 (2d Cir. 2016) (summary order); *Osby v.*

A further question we now face is whether the burden-shifting framework established by the *McDonnell Douglas* line of cases for claims of discrimination on account of race, religion, or national origin under Title VII, and the associated pleading burden we articulated in *Littlejohn*, apply also to Title IX claims alleging discrimination on account of sex in education programs or activities that receive federal support. These claims have so much in common that, at least on certain sorts of facts, rules the Supreme Court established for Title VII litigation appear to apply also to such similar claims of sex discrimination under Title IX. *See Yusuf*, 35 F.3d at 714 ("[C]ourts have interpreted Title IX by looking to . . . the caselaw interpreting Title VII."). In several prior cases, we have applied Title VII's framework and principles to Title IX claims. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) (explaining that the Title VII framework applies to employment discrimination claims brought under Title IX); *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 248-49 (2d Cir. 1995) (stating that Title VII standards should be applied in determining a university's liability for a student's claim of sexual harassment under Title IX); *see also Papelino v. Albany Coll. of*

---

*City of New* York, 633 F. App'x 12, 13 (2d Cir. 2016) (summary order). We have also cautioned district courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage. *See Dawson*, 624 F. App'x at 770 ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . . .").

*Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (stating that "[i]n [certain] respects, a Title IX sex discrimination claim requires the same kind of proof required in a Title VII sex discrimination claim," and applying Title VII standards to two sexual harassment claims).

While we did not explicitly state in *Yusuf* that we were incorporating *McDonnell Douglas*'s burden-shifting framework into Title IX jurisprudence, we did state, after discussing the plaintiff's allegations, that "[s]imilar allegations, if based on race in employment decisions, would more than suffice in a Title VII case, and we believe they easily meet the requirements of Title IX." *Yusuf*, 35 F.3d at 716. We also adopted Title VII's requirement of proof of discriminatory intent, and stated that "[a]llegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases." *Id.* at 714-15. *Yusuf* made clear that Title VII cases provide the proper framework for analyzing Title IX discrimination claims.[9] We therefore hold that

---

[9] Our court has extended the *McDonnell Douglas* burden-shifting framework to several other statutory schemes. *See, e.g.*, *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999) (applying the framework to racial discrimination claims brought under 42 U.S.C. §§ 1981 and 1983); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 & n.2 (2d Cir. 2009) (applying the framework to the Age Discrimination in Employment Act of 1967 (ADEA), with the distinction that an ADEA plaintiff must demonstrate that age was a but-for, and not merely a motivating, factor), *superseded by statute on other grounds*; *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (applying the framework to Fair Housing Act disparate treatment claims).

the temporary presumption afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination plaintiffs under Title IX as well.

Thus, a complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination. Because *Littlejohn* was not decided until after the district court made its decision in this case, and it had not yet been decided that the Title VII *McDonnell-Douglas* framework applies to Title IX complaints, the district court might not have anticipated that *McDonnell-Douglas*'s temporary presumption in a plaintiff's favor reduces the plaintiff's pleading burden, so that the alleged facts need support only a minimal inference of bias.

**b. Plaintiff's Title IX Claims**

Plaintiff's Complaint pleads sufficient specific facts giving at least the necessary minimal support to a plausible inference of sex discrimination to survive a Rule 12(b)(6) motion to dismiss, if Title IX's other requirements are met. It alleges that Columbia's hearing panel (which erroneously imposed discipline on the Plaintiff), its Dean (who rejected his appeal), and its Title IX investigator (who influenced the panel and the Dean by her report and recommendation), were all

motivated in those actions by pro-female, anti-male bias. Those alleged biased attitudes were, at least in part, adopted to refute criticisms circulating in the student body and in the public press that Columbia was turning a blind eye to female students' charges of sexual assaults by male students.

Among the Complaint's allegations that support the inference of sex discrimination are the following. Both the investigator and the panel declined to seek out potential witnesses Plaintiff had identified as sources of information favorable to him.[10] The investigator and the panel failed to act in accordance with University procedures designed to protect accused students. The investigator, the panel, and the reviewing Dean, furthermore, reached conclusions that were incorrect and contrary to the weight of the evidence.

When the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an

---

[10] Columbia's proffered explanation that those witnesses were not sought out because they had no relevance to whether Plaintiff had coerced Jane Doe by unreasonable pressure during the preceding weeks does not justify the dismissal of the Complaint. This is so for two reasons. First, while a factfinder might ultimately determine that this was the true reason for not seeking out and interviewing these witnesses, it is also plausible that the failure to seek them out was attributable to discrimination, as the Complaint alleges. It is not the court's function in ruling on a motion to dismiss for insufficiency of the complaint to decide which was the defendant's true motivation. Second, it is not correct that the potential witnesses suggested by Plaintiff related exclusively to the events of the night of the sexual encounter and not to the preceding weeks. At least one was allegedly identified as a friend and potential confidante of Jane Doe's and not as a person who observed the interaction between John and Jane on the night of the encounter.

apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias. Here, the facts pleaded in the Complaint (which we must accept in the light most favorable to Plaintiff) support John Doe's version (not surprisingly as they represent his contentions). The Complaint's narrative depicts Jane Doe as an altogether willing participant. It denies that Plaintiff coerced Jane and asserts that "no evidence was presented" in support of the claim of coercion. A 114. The alleged fact that Sessions-Stackhouse, and the panel and the Dean, chose to accept an unsupported accusatory version over Plaintiff's, and declined even to explore the testimony of Plaintiff's witnesses, if true, gives plausible support to the proposition that they were motivated by bias in discharging their responsibilities to fairly investigate and adjudicate the dispute.

While those allegations support the inference of bias, they do not necessarily relate to bias on account of sex. Additional allegations of the Complaint, however, give ample plausible support to a bias with respect to sex. As outlined above, the Complaint alleges that during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students. It alleges further that the

24

University's administration was cognizant of, and sensitive to, these criticisms, to the point that the President called a University-wide open meeting with the Dean to discuss the issue. Against this factual background, it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault.

Columbia argues that the pleaded facts do not support an inference of intentional sex discrimination. It argues that the criticism of the University was for not taking student complaints of sexual assault seriously, and that any motivation on the part of the panel to demonstrate that it takes such complaints seriously is not the same thing as a motivation to discriminate against an accused male student. The district court stated that any bias in favor of Jane Doe "could equally have been—*and more plausibly was*—prompted by lawful, independent goals, such as a desire (enhanced, perhaps, by the fear of negative publicity or Title IX liability to the victims of sexual assault) to take allegations of rape on campus seriously and to treat complainants with a high degree of sensitivity." *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015). This reasoning fails to recognize the court's obligation to draw reasonable inferences *in favor of* the sufficiency of the

complaint. *Iqbal* does not require that the inference of discriminatory intent supported by the pleaded facts be *the most plausible* explanation of the defendant's conduct. It is sufficient if the inference of discriminatory intent is plausible.

The Complaint alleges that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students—especially varsity athletes. There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults.[11]

---

[11] It is worth noting furthermore that the possible motivations mentioned by the district court as more plausible than sex discrimination, including a fear of negative publicity or of Title IX liability, are not necessarily, as the district court characterized them, lawful motivations distinct from sex bias. A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action. A covered university that adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex.

The Complaint sufficiently alleges circumstances plausibly supporting a similar motivation on the part of Sessions-Stackhouse. It alleges that she had suffered personal criticism in the student body for her role in prior cases in which the University was seen as not taking seriously the complaints of female students. At the time Sessions-Stackhouse investigated Jane Doe's accusation of Plaintiff, she knew that the University had been criticized for its conduct of investigations of sexual abuse, and specifically accused of conducting the investigations in a manner that favored male athletes and that was insufficiently protective of sexually assaulted females. It is plausible that she was motivated to refute those criticisms by siding with the accusing female and against the accused male.

Columbia further contends that bias on the part of Sessions-Stackhouse cannot be actionable because she "was merely the investigator [and] did not sit on the panel that found [Plaintiff] responsible for sexual misconduct." Defendant's Br. at 33. It argues, "Because the purported procedural errors were made by someone who did not participate in determining [Plaintiff's] responsibility, those errors are insufficient to state [a claim]." *Id.*

The argument is not persuasive. Although Sessions-Stackhouse was not the decision-maker, she allegedly had significant influence, perhaps even determinative influence, over the University's decision. According to Plaintiff's

allegations, Sessions-Stackhouse was appointed by Columbia to the role of Title IX investigator with the expectation that her investigations and reports would inform the University's decisions. The Complaint plausibly alleges that her report advocating discipline influenced the University's decision to sanction John Doe. The fact that Sessions-Stackhouse was not the decision-maker does not render sex bias in her performance of her duties irrelevant to liability of the University.[12]

According to precedent under Title VII, a defendant institution is not shielded from liability for discrimination practiced by an employee endowed by the institution with supervisory authority or institutional influence in recommending and thus influencing the adverse action by a non-biased decision-maker. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008) (holding that a plaintiff is "entitled to succeed, even absent evidence of illegitimate bias on the part of the ultimate decision maker," so long as a biased person endowed with institutional influence "played a meaningful role in the process" (internal quotations and alteration removed)); *see also Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (holding, in the context of the Uniformed Services Employment and

---

[12] We recognize that depending on the answers to questions regarding the status of the Title IX investigator in the Columbia hierarchy, the theory of bias on the part of Sessions-Stackhouse may be precluded by the standards enunciated in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998).

Reemployment Rights Act, that when a supervisor performs an act motivated by antimilitary animus intended to cause an adverse employment action, and the act proximately causes that adverse action, the employer is liable notwithstanding that the biased supervisor did not make the ultimate employment decision).

We conclude that the Complaint adequately pleads facts that plausibly support at least the needed minimal inference of sex bias. *See Littlejohn*, 795 F.3d at 311. Accordingly, we vacate the district court's dismissal of the Title IX claim, and remand for further consideration. Our decision to reinstate the Complaint in no way suggests that our court has any view, one way or the other, on the likely accuracy of what Plaintiff has alleged. We recognize that the facts may appear in a very different light once Defendant Columbia has had the opportunity to contest the Plaintiff's allegations and present its own version. The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed. At this stage, the court is compelled to assume the truth of the plaintiff's factual allegations and draw all reasonable

inferences in his favor. Following those rules, we conclude that the Complaint sufficiently alleges that Columbia was motivated by sex bias.[13]

## CONCLUSION

For the foregoing reasons, we **VACATE** the district court's judgment dismissing the Complaint and **REMAND** for further proceedings.

---

[13] We also vacate the dismissal of the state-law claims asserted in the Complaint. The district court dismissed these claims without prejudice to their renewal in state court, on the theory that these claims were supplemental to the federal-law claims from which the court's jurisdiction derived. The Complaint, however, asserted diversity jurisdiction as well as federal question jurisdiction. The court will need to address the state-law claims on remand.