**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 19-2158 and 19-2260

———————

JOHN DOE,
                    Appellant in No. 19-2158

v.

ST. JOSEPH'S UNIVERSITY; JANE ROE

St. Joseph's University,
                    Appellant in No. 19-2260

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-18-cv-02044)
District Judge: Hon. Paul S. Diamond

———————

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
January 24, 2020

Before: AMBRO, MATEY, and ROTH, *Circuit Judges*.

(Opinion filed: October 27, 2020)

———————

OPINION*

———————

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

After St. Joseph's University (SJU) found John Doe responsible for sexual assault, Doe sued, arguing that the investigation violated his rights under Title IX. The District Court granted summary judgment for SJU, prompting this appeal. Because Doe has not presented evidence of bias "on the basis of sex," and because the additional discovery he seeks is protected by attorney-client privilege, we will affirm.

## I. BACKGROUND

In February 2018, Doe and Jane Roe—both SJU students—had a sexual encounter in Doe's dorm. A few days later, Roe told SJU's Title IX Coordinator, Dr. Mary-Elaine Perry, that Doe squeezed her neck forcefully during their time together without her consent. In response, the school appointed an outside attorney to investigate.

After interviewing Doe and Roe, the investigator found that Doe "put his hand around [Roe's] throat and squeezed her neck area" without consent during the incident, which "left bruises." (App. at 1986–87.) The investigator therefore concluded that Doe was "responsible" for sexual assault, as that term was defined in the school's Sexual Misconduct Policy. (App. at 1987–88.) As a result, SJU placed Doe on disciplinary probation.

Doe then sued SJU, asserting that the proceedings against him were infected with sex bias, in violation of Title IX. After discovery, the District Court held that there was

2

insufficient evidence for Doe to take this claim to the jury and granted summary judgment for SJU.[1] This appeal followed.[2]

## II. DISCUSSION

### A. Title IX Claims

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Doe argues that SJU's investigation and punishment violated this statute, and he advances his claim under both a "selective enforcement" theory and an "erroneous outcome" theory. We address each in turn.

#### 1. Selective Enforcement

A selective-enforcement claim asserts that, "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceedings was affected by the student's gender." *Id.* To prevail under this theory, Doe must identify a similarly situated female student treated less harshly. *See Klocke v. Univ. of Tex. at Arlington*, 938 F.3d 204, 213 (5th Cir. 2019); *cf. Doe v. Univ. of the Scis.*, 961 F.3d 203, 210 n.4 (3d Cir. 2020) (female comparator and plaintiff both allegedly engaged in sexual

---

[1] Doe's complaint also contained several state-law claims against SJU and Roe. After granting summary judgment on the Title IX claim, the District Court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice. The District Court also denied SJU's counterclaim for attorneys' fees. Neither decision is challenged in this appeal.

[2] The District Court has jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. *Williams v. Sch. Dist. of Bethlehem*, 998 F.2d 168, 170 (3d Cir. 1993).

activity without affirmative consent). To that end, Doe points to two SJU investigations where women were found not responsible for violating school policy.

In the first case, a female student was investigated after requiring other female students to touch her bare buttocks. SJU's investigator determined that, in part because the touching occurred in the context of a "team-bonding" incident, it was "not indecent," "not sexual contact," "not touching in a sexual manner," and therefore not in violation of school policy. (App. at 1096–97.) In the second case, SJU received an anonymous report that a female staff member kissed a male student on the lips at an end-of-year luncheon. During the investigation, the student stated that he "was not uncomfortable," and that the kiss was "a non-event," "non-sexual," and "not . . . unwelcomed." (App. at 1104.) Based on these and other facts, SJU's investigator found that the staff member did not violate school policy.

Both cases are distinguishable. Neither involved a private romantic encounter leading to allegations of nonconsensual physical contact. Neither involved a victim alleging to have been physically harmed. And neither was initiated by a complaint from the alleged victim. In sum, a private, initially-consensual encounter that leads to unwanted, injurious sexual contact is insufficiently similar to a group hazing event or a public kiss. For that reason, the District Court did not err in granting summary judgment for SJU on Doe's selective enforcement claim.

2.      Erroneous Outcome

To prevail on an erroneous-outcome claim, a plaintiff must "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and then show

4

"particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf*, 35 F.3d at 715. Assuming Doe has sufficiently impeached the accuracy of the proceedings against him, we turn to his assertions of gender bias.

Doe argues that the investigator was motivated by gender bias, labeling several aspects of her investigation "cursory." (Opening Br. at 36.) He notes, for example, that the investigator interviewed no witnesses other than himself and Roe, failed to ask whether Roe's memory of the evening was distorted by drug use, and declined to question Roe about other potential causes of her bruising. But even if these investigatory choices show bias, a jury would have no basis to conclude that this bias was gender motivated. *See Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (noting that allegations of a shoddy investigation may "support the inference of bias," but that such allegations "do not necessarily relate to bias on account of sex"). In other words, Doe at most satisfies only half of his evidentiary burden.

Doe also argues that Perry was motivated by gender bias, pointing to statements she made on a 2018 grant application. But no evidence shows that Perry played any influential role in the investigation or adjudication. *Cf. Columbia Univ.*, 831 F.3d at 58 (inference of gender bias permitted where allegedly biased individual "had significant influence, perhaps even determinative influence, over the University's decision"). At most, Perry documented Roe's allegations in a written complaint and transmitted that complaint to the appropriate school officials. But there is no evidence that Perry either encouraged Roe's accusations or that the complaint misstated or exaggerated her claims. So even if we assume Perry's

judgment might suffer from bias, Doe has not offered facts showing that possible bias impacted SJU's investigation.

Finally, Doe argues that SJU's emphasis on combatting sexual assault reflects the school's gender bias. He notes, for example, that a school presentation encouraged students to believe and support those who claimed to be victims of sexual violence. He also notes that SJU had a financial incentive, in the form of a federal grant, to encourage students to report sexual misconduct. And he notes that SJU retained its existing sexual misconduct policy in the face of new guidance from the United States Department of Education. But all of these facts are gender neutral. The presentation, for example, contains no language showing that female accusers are more likely to be telling the truth, or more deserving of help, than male accusers. The grant doesn't reward reports against males any more than reports against females. And the federal guidance does not suggest that any existing policies discriminated against men. While some courts have properly pointed to internal or external pressure when evaluating gender bias, those cases all contained indicia of specific intent to punish male students. *See, e.g.*, *Univ. of the Scis.*, 961 F.3d at 210 (gender bias plausibly alleged where the school, "encouraged by federal officials, ha[d] instituted solutions to sexual violence against women that abrogate the civil rights of men and treat men differently than women"); *Menaker v. Hofstra Univ.*, 935 F.3d 20, 27 (2d Cir. 2019) (gender bias plausibly alleged where, among other things, the school "faced internal criticism for its assertedly inadequate response to *male* sexual misconduct on campus" (emphasis added)); *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019) (gender bias plausibly alleged where, among other facts, school-affiliated group shared an article titled

6

"Alcohol isn't the cause of campus sexual assault. Men are."); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (gender bias plausibly alleged where, for example, "news media consistently highlighted the university's poor response to *female* complainants" (emphasis added)); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (gender bias plausibly alleged where school was being sued by a female student for failing to expel her alleged attacker). As Doe does not point to evidence of similarly slanted conduct by SJU, the District Court did not commit error in deciding this claim.[3]

## B. Attorney-Client Privilege

During discovery, Doe moved to compel the deposition of SJU's in-house counsel, Marianne Schimelfenig, about a meeting with school administrators discussing the Department of Education's guidance on sexual assault.[4] SJU objected on privilege grounds, and the District Court denied Doe's request.[5]

Doe challenges this ruling on two grounds. First, he argues that, when asserting the privilege, SJU failed to "describe the nature of the . . . communications . . . not produced or disclosed . . . in a manner that . . . enable[d him] to assess the claim," in violation of Fed. R. Civ. P. 26(b)(5)(A)(ii). In response to Doe's motion, SJU submitted an affidavit from

---

[3] In *University of the Sciences*, we held that a Title IX plaintiff need not rely on a pre-identified theory but instead need only show "that a federally-funded college or university discriminated against [him] on the basis of sex." 961 F.3d at 209. As the above analysis shows, Doe has not met this burden.

[4] Alternatively, Doe sought to question the administrators themselves.

[5] "We exercise plenary review over a district court's determination on the legal issues underlying a claim of attorney-client privilege, and review the facts for clear error." *Buskirk v. Apollo Metals*, 307 F.3d 160, 173 (3d Cir. 2002).

Schimelfenig stating that "[t]he entirety of the [October 2017] meeting was an attorney-client meeting for the purpose of providing legal advice" about complying with the new federal guidance. (App. at 1947.) Doe asserts that more specificity is required, since Schimelfenig also serves as SJU's corporate secretary. But Schimelfenig's affidavit confirms that she was attending "[i]n [her] capacity as SJU's General Counsel" and that "[t]here was no business [discussed at] the meeting." (App. at 1947.) And none of the evidence identified by Doe casts doubt on her assertion.

Second, Doe argues that SJU waived the privilege by allowing another SJU administrator to testify about the meeting during his deposition. It is true that disclosing information to a third party may waive any privilege that would otherwise attach. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). But such waiver applies "only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Id.* at 1426 n.12. Here, the administrator's testimony was essentially limited to stating the meeting's purpose and the conclusion reached (i.e., that SJU's then-current policies conformed to the new guidance). And Doe makes no argument why, given that limited disclosure, it would be unfair to prevent SJU from keeping the substance of that meeting's discussion confidential.

The District Court, then, properly denied Doe's motion to compel.

### III. CONCLUSION

For these reasons, we will affirm the District Court's orders.