21-1927
*Graham v. State University of New York at Albany*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of January, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> BARRINGTON D. PARKER,
> ALISON J. NATHAN,
> *Circuit Judges,*

_____

GORDON GRAHAM, DANIELLE DUGUID, *individually and on behalf of all those similarly situated,* OLIVIA SCHULTZ, *individually and on behalf of all those similarly situated*, COURTNEY TRUDEAU, *individually and on behalf of all those similarly situated*, TAYLOR WATTS, *individually and on behalf of all those similarly situated*, AND JOYCE KAGAN*, individually and on behalf of all those similarly situated*,

> *Plaintiffs-Appellants*,

ISIDORA PEJOVIC, *individually and on behalf of all those similarly situated*, CHAE BEAN KANG, *individually and on behalf of all those similarly situated*, ALBA SALA HUERTA, *individually and on behalf of all those similarly situated*, CHASSIDY KING, *individually and on behalf of all those similarly situated*, BRIANNA CICORIA, *individually and on behalf of all those similarly situated*, RHEONNA KOSS,

1

*individually and on behalf of all those similarly situated*,

        *Plaintiffs*,

    v.                                        21-1927

STATE UNIVERSITY OF NEW YORK AT ALBANY AND
MARK BENSON,

        *Defendants-Appellees*,

———————————————————————

| | |
|---|---|
| For Plaintiffs-Appellants: | CARLOS F. GONZALEZ, Carlos F. Gonzalez, P.A. Coral Gables, FL. |
| | Bernays T. Barclay, *on the brief*, Rimon, P.C., Albany, NY. |
| For Defendants-Appellees: | SARAH L. ROSENBLUTH, Assistant Solicitor General (Barbara D. Underwood, Solicitor General & Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (McAvoy, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **DISMISSED IN PART** and **AFFIRMED IN PART**.

Plaintiff-Appellant Gordon Graham ("Graham") served as the women's varsity tennis coach for Defendant-Appellee State University of New York at Albany (the "University"), until 2016 when the University disbanded the team. The following year, the University declined to renew Graham's employment contract. Soon thereafter, Graham, together with a group of female

student-athletes (the "Student-Plaintiffs"),[1] filed suit against the University and its former athletics director Mark Benson ("Benson"), alleging that the University failed to provide equal opportunity for female students to participate in varsity athletics in violation of Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, *et seq.* Graham and the Student-Plaintiffs now appeal from the July 6, 2021 judgment of the district court, granting the University's motion for summary judgment and denying the Student-Plaintiffs' motion for class certification. *See Duguid v. State Univ. of N.Y. at Albany*, No. 17 Civ. 1092 (TJM) (DJS), 2021 WL 2805637 (N.D.N.Y. July 6, 2021). We presume familiarity with the underlying facts, procedural history, and issues on appeal.

## I.       The Student-Plaintiffs' Title IX Claims

As a preliminary matter, we must determine whether we possess jurisdiction to reach the merits of the Student-Plaintiffs' claims. The University urges that each of the named Student-Plaintiffs has either graduated from the University or no longer retains eligibility to participate in varsity athletics, thereby rendering moot their claims for injunctive relief.[2] *See Campbell–Ewald*

---

[1] In addition to their individual claims, the Student-Plaintiffs brought Title IX claims on behalf of a putative class of "all present, prospective and future female students who are harmed by and wish to end SUNY Albany's sex discrimination in the allocation of athletic participation opportunities." JA 198 ¶ 32. While the Student-Plaintiffs initially consisted of a group of former members of the disbanded women's tennis team, they have since been replaced by a group of female student rowers, who take issue with the University's lack of a female rowing team.

[2] The Student-Plaintiffs contend that the University has failed to preserve its mootness argument for appeal, but that is incorrect. *See Fox v. Bd. of Trs. of State Univ. of N.Y.,* 42 F.3d 135, 140 (2d Cir. 1994) ("Defects in subject matter jurisdiction [such as mootness] cannot be waived and may be raised at any time during the proceedings."). The Student-Plaintiffs also argue that the University violated their rights under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, by including in their brief educational information without the Student-Plaintiffs' consent. But FERPA expressly provides for disclosure of "directory information," defined to include, *inter alia*, a student's name and dates of attendance, without a student's consent so long as the educational information satisfies certain public notice requirements. 20 U.S.C. § 1232g(a)(5)(A)–(B); 34 C.F.R. § 99.37(a). The University has clearly

3

*Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) ("If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be dismissed as moot." (citation and internal quotation marks omitted)).   In the class action context, where a class has already been certified, the mooting of the class representative's dispute does not render the claims of other class members nonjusticiable. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).   Where, as here, a class has *not* been certified, "[a] named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified."   *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980); *see also Comer v. Cisneros*, 37 F.3d 775, 778 (2d Cir. 1994) ("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot.").   In such circumstances, putative class representatives whose individual claims have become moot may appeal only the denial of class certification.   *See Geraghty*, 445 U.S. at 404; *see also Milanes v. Napolitano*, 354 F. App'x 573, 575 (2d Cir. 2009) (summary order).

The University proffers that the Student-Plaintiffs' personal stake in this litigation expired, at the latest, following the spring 2022 semester, because that is when the final Student-Plaintiff's eligibility to participate in varsity athletics expired.   Under current National Collegiate Athletic Association ("NCAA") rules, student-athletes have five calendar years of eligibility to participate in intercollegiate competition, calculated "from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution[.]"   Nat'l Collegiate Athletic Ass'n, *2021–2022 NCAA Division I Manual* 60 (Rule

provided the requisite notice to disclose directory information, and there is no indication that any of the Student-Plaintiffs invoked their right to have such information withheld.   *See* Univ. at Albany, *FERPA Information for Students*, https://www.albany.edu/registrar/students/ferpa (last visited Jan. 3, 2023).

12.8.1) (Aug. 1, 2021), https://web3.ncaa.org/lsdbi/reports/getReport/90008. Here, the Student-Plaintiffs testified as to when they first enrolled in a collegiate institution, which starts the clock for the NCAA's five-year rule.[3] The Student-Plaintiffs do not dispute that they are ineligible to participate in NCAA athletics and even conceded at oral argument that they have all graduated from the University. The Student-Plaintiffs invite us to ignore the facts demonstrating the mootness of their claims, which we cannot do because it pertains to subject matter jurisdiction. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir.2006) ("[W]e have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*.").

Because the Student-Plaintiffs and their putative class seek only prospective injunctive relief, their ineligibility to participate in varsity athletics means they do not stand to personally "benefit from an order requiring equal athletic opportunities[.]" *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (collecting cases); *see also Grandson v. Univ. of Minn.*, 272 F.3d 568, 574 (8th Cir. 2001) ("That a plaintiff lacks eligibility or is no longer a student is an adequate basis to dismiss an individual Title IX claim for injunctive relief."). As such, their claims are moot, and we possess jurisdiction only to review the district court's decision not to certify their class. As to this issue, the Student-Plaintiffs argue only that we should "grant [their] motion for class certification for all of the reasons set forth in detail" in their class certification motion before the district court. Appellant's Br. 32. This argument-by-reference is insufficient to preserve the issue for appeal. *See Chevron Corp. v. Donziger*, 990 F.3d 191, 204 n.8 (2d Cir. 2021) ("Appellants do not preserve questions for appellate review by merely incorporating an argument made to the district court by

---

[3] *See* Dist. Ct. Dkt. No. 126-7 at 14–15 (Danielle Duguid matriculated to the University in fall 2016); 126-8 at 11 (same for Olivia Schultz); 126-9 at 10 (same for Courtney Trudeau); 126-10 at 14 (Taylor Watts matriculated in fall 2017); 126-11 at 12 (same for Joyce Kagan).

reference in their brief." (citation omitted)). The Student-Plaintiffs have therefore waived the issue of class certification on appeal.

As such, we lack subject matter jurisdiction over the Student-Plaintiffs' Title IX claims.

## II.     Graham's Title IX Claim

We next turn to Graham's Title IX claim, which poses no jurisdictional hurdle. "We review *de novo* a district court's grant of summary judgment after construing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Sotomayor v. City of New York*, 713 F.3d 163, 164 (2d Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.

According to Graham, his individual Title IX claim "derives from the discrimination experienced by the female student-athletes he coached," because "he too, suffered gender discrimination because of the cancellation of the women's tennis program." Appellant's Br. 25, 27. On appeal, Graham argues that the district court committed legal error by importing into Title IX a requirement that he proffer evidence that the University eliminated the women's tennis team under circumstances giving rise to an inference of discrimination. This was not error. We have held that "the burden-shifting framework established by the *McDonnell Douglas* line of cases for claims of discrimination on account of race, religion, or national origin under Title VII . . . also appl[ies] to Title IX claims alleging discrimination on account of sex in education programs." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Radwan v. Manuel,* 55 F.4th 101, 130 (2d Cir. 2022) ("Title VII's burden-shifting framework generally guides our analysis of claims brought under Title IX."). Under this framework, a plaintiff must first "establish a *prima facie* case of discrimination," an element of

which is proof that "the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted); *accord Radwan*, 55 F.4th at 130. "[I]f the plaintiff succeeds in presenting a *prima facie* case, the defendant may rebut that showing by articulating a legitimate, non-discriminatory reason for the employment action." *Weinstock*, 224 F.3d at 42. Finally, "[f]or the case to continue, the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Id.* Thus, the district court did not err in requiring Graham to make out a *prima facie* case of sex discrimination to sustain his Title IX claim.

Graham next argues that even if he must establish a *prima facie* case of sex discrimination, he has done so by showing the existence of a persistent gender-based disparity in athletic opportunities for women at the University. But even assuming *arguendo* that these program-wide statistics suffice as proof of the University's intent to discriminate against female athletes when it eliminated the tennis team, Graham has failed to rebut the University's stated non-discriminatory rationale for its decision. The University explains that it discontinued the team following the America East Conference's decision to cease sponsoring women's tennis, which left the team without a competitive conference in which to participate. JA 303. The University investigated alternatives to eliminating its Division I women's tennis program but concluded there was no viable alternative. JA 303–04. The University could not transfer to a different conference within the country's eastern region because these conferences were full, while joining an out-of-region conference posed logistical and financial difficulties. JA 304. Further, operating the women's tennis team as an independent entity would have stripped the athletes of the opportunity to compete in national tournaments, thereby depriving them of a realistic opportunity to compete. *Id*. The

University thus decided to discontinue the team and developed a plan to divert the resources previously allocated for women's tennis to other women's athletics programs.   JA 304–05.

Graham disputes that the University made a legitimate attempt to sustain the tennis team, describing its efforts as "half-hearted" because they "did not even include the advice, counsel, or input of the team's head coach."   Appellant's Br. 30.   Graham asserts that the University exaggerates the burdens associated with operating the team independently or joining an out-of-region conference, and that both were viable options to keep the women's tennis team competitive.   JA 136.   However, he does not point to any evidence that calls into question the legitimacy of the University's stated rationale for eliminating the tennis team and reallocating the resources to other women's sports.   To the contrary, Graham's opinion testimony evidences merely his disagreement with the University's decision to terminate the team, not that the decision was a pretext for discrimination.   *Cf. Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (noting that "we do not sit as a super-personnel department that reexamines an entity's business decisions" (citation and internal quotation marks omitted)).   Under these circumstances, Graham has failed to carry his burden to rebut the University's non-discriminatory rationale for disbanding the team.

\* \* \*

We have considered the parties' remaining arguments and find them to be without merit. Accordingly, we **DISMISS** the Student-Plaintiffs' Title IX claims as moot and **AFFIRM** the judgment of the district court as to Graham's Title IX claim.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8